J-S41015-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                      : PENNSYLVANIA
            :

         v.                   :

            :

JULIO MARSHALL              :
            :
            Appellant        : No. 487 EDA 2024

Appeal from the Judgment of Sentence Entered October 24, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-000406-2023

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                      : PENNSYLVANIA
            :

         v.                   :

            :

JULIO MARSHALL              :
            :
            Appellant        : No. 488 EDA 2024

Appeal from the Judgment of Sentence Entered October 24, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-000407-2023

BEFORE:  MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:          **FILED DECEMBER 05, 2024**

In these consolidated appeals, Julio Marshall (Appellant) appeals from the judgments of sentence entered following his convictions by a jury of (a) one count of false identification to law enforcement at docket number CP-39-CR-0000406-2023 (No. 406); and (b) two counts each of robbery, simple

assault, and theft by unlawful taking; and one count of aggravated assault at docket number CP-39-CR-0000407-2023 (No. 407).[1] We affirm.

On March 13, 2023, the Commonwealth filed a criminal information charging Appellant with, *inter alia*, the above offenses. Following pretrial litigation irrelevant to the instant appeal, the matter proceeded to a jury trial on August 22, 2023. The trial court summarized the evidence adduced at trial:

> On September 12, 2022, the victim, Lauren Shoor [Ms. Shoor)], was in Allentown[, Pennsylvania,] for a job interview with a local employer. On that evening, she checked into the Americus Hotel, which is located at 6th and Hamilton Streets in Allentown. Sometime between 9:00 p.m. and 10:00 p.m., [Ms. Shoor] decided to venture out of the hotel to a nearby 7-11 for coffee. … [Ms. Shoor] noticed a man [(later identified as Appellant)] standing on the corner both before and after she went into the 7-11. When [Ms. Shoor] left the 7-11, she headed back to the Americus, but noticed that her movements were being shadowed by [Appellant].
>
> [Ms. Shoor] entered the main entrance of the Americus, and [Appellant] grabbed [her] from behind …. [Appellant] demanded money, but [Ms. Shoor] resisted. [Ms. Shoor] was either pushed or lost her balance, and found herself on her back. [Appellant] then [got] on top of [Ms. Shoor], threatening her and brandishing a "very long flathead screwdriver." [Ms. Shoor] tried to fight [Appellant], and was screaming for help. [Appellant] reached into [Ms. Shoor's] pockets, but [found] nothing of value …. However, attached to [Ms. Shoor's] front belt loop was her Alcoholics Anonymous [(AA)] sobriety coin, which [Appellant] ripped off. It was a purple and gold coin with purple glitter. … The coin became significant because [A]ppellant, when arrested, had possession of that coin.

---

[1] 18 Pa.C.S.A. §§ 4914(a), 3701(a)(1)(ii), 2701(a)(2), 3921(a), 2702(a)(4).

As Ms. Shoor was fighting and screaming, two hotel employees[, Matthew Bishwaty (Mr. Bishwaty) and Nicolette Torres (Ms. Torres),] came to assist her. [Appellant] … turned his attention to the hotel employees. He chased them into the area where the hotel register was located. The surveillance video from the Americus captured the attack on Ms. Shoor, and the attack … on the hotel employees. Photographs were also utilized to corroborate Ms. Shoor's testimony.

… [Mr.] Bishwaty[] testified that he was at the front desk at the time Ms. Shoor was attacked. When the attack unfolded, both Mr. Bishwaty and [Ms.] Torres … made their way to assist Ms. Shoor. Ms. Torres hit [Appellant] with one of the "valet carts," and Mr. Bishwaty dialed 9-1-1. [Appellant] then made his way to the front desk and pointed the flathead screwdriver, threatening Mr. Bishwaty. [Appellant] also demanded the money in the desk drawers. Mr. Bishwaty opened the drawer, and [Appellant] took cash and cash-drop envelopes, and ran out. … The total amount of the theft was between $400 and $500.

Detective Samson Wega [(Detective Wega)] … was alerted to a robbery at the Americus Hotel, which was approximately two blocks away [from his location at the Detectives Bureau, and was provided Appellant's description]. … As [Detective Wega] stepped outside and began walking to [the Americus Hotel], he noticed an individual … who matched the description of the robbery suspect. The initial dispatch was a "male wearing a red hooded sweatshirt and a black baseball cap." Detective Wega yelled "hey," and [Appellant] "immediately started to run away[."] … Detective Wega yelled "police … stop running …" without success, and a foot chase ensued. As the chase [progressed], Detective Wega observed "money coming out of [Appellant's] pockets, and as [Appellant] was running, [Detective Wega] could see more money in the center of the street." Detective Wega continued to gain on the suspect, and when [A]ppellant reached the Linden Street [B]ridge, [Appellant] jumped off the bridge and landed 25 to 30 feet below in the woods next to the Jordan Creek. [A]ppellant then tried to conceal himself, but Detective Wega, from various vantage points, could see [A]ppellant and his red hood[ed sweatshirt]. [A]ppellant, during this pursuit, attempted to change his appearance by discarding the red [hooded sweatshirt]. The red [hooded sweatshirt] and black baseball cap were recovered in the wooded area off the Linden Street [B]ridge.

The foot chase on land became a water pursuit when [A]ppellant entered the Jordan Creek with multiple officers in pursuit. [Detective Wega testified,] "[Appellant] kind of crawled his way into the Jordan Creek and started to try to swim and conceal himself, but I could see him the whole time. So he swims a little north. He starts swimming south." Officer Jarrod Bulger, who responded and maintained the radio communications, entered the Jordan Creek, and … took [A]ppellant into custody in the creek. …

[A]ppellant, after his apprehension, used the fictitious name Samuel Santiago-Delgado.

Trial Court Opinion, 3/8/24, at 3-6 (footnotes omitted).

On August 23, 2023, a jury convicted Appellant of the above-described offenses. The trial court deferred sentencing for the preparation of a presentence investigation report. On October 19, 2023, Appellant, *pro se*, filed a petition requesting removal of counsel based on Appellant's intention to file a lawsuit against the Lehigh County Public Defender's Office.[2] ***See*** Petition for Removal of Counsel, 10/19/23, at 1 (unpaginated). On October 24, 2023, the trial court denied Appellant's motion. That same date, the trial court sentenced Appellant to an aggregate twenty to forty years in prison.

---

[2] Appellant's trial counsel, Robert Eyer, Esquire (trial counsel), was employed by the Lehigh County Public Defender's Office. Appellant averred he intended to file suit against the Lehigh County Public Defender's Office based on trial counsel's alleged ineffectiveness. ***See*** Petition for Removal of Counsel, 10/19/23, at 1 (unpaginated).

On November 2, 2023,[3] Appellant filed a counseled post-sentence motion challenging, *inter alia*, the weight and sufficiency of the evidence supporting his convictions. **See** Post-Sentence Motion, 11/2/23, at 4-5. The trial court held a hearing on Appellant's post-sentence motion on January 24, 2024.[4] At the conclusion of the hearing, the trial court denied Appellant's motion. Appellant timely appealed, and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. On March 8, 2024, the trial court filed its 1925(a) opinion.

Appellant raises the following issues:

A. Whether the evidence was sufficient to sustain [Appellant's] convictions if the Commonwealth failed to present proof of [Appellant] being the perpetrator of the criminal offenses?

B. Was the verdict against the weight of all the evidence in regards to the proof of whether or not [Appellant] was the perpetrator of the criminal offenses?

Appellant's Brief at 4 (some capitalization modified).

_____

[3] Also on November 2, 2023, Appellant filed a *pro se* notice of appeal, which this Court's prothonotary docketed at 2837 EDA 2023. On December 11, 2023, we quashed Appellant's appeal because 1) Appellant listed the incorrect trial court docket in the caption of his *pro se* notice of appeal, and 2) Appellant's post-sentence motion was still pending in the trial court. **See** Order, 12/11/23, at 1-2; **see also Commonwealth v. Keys**, 460 A.2d 253, 254 (Pa. Super. 1983) (quashing appeals taken from incorrect bills of information); Pa.R.Crim.P. 720, cmt ("No direct appeal may be taken by a defendant while his or her post-sentence motion is pending.").

[4] In the interim, on November 17, 2023, Appellant filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, alleging his trial counsel rendered ineffective assistance. PCRA Petition, 11/17/23, at 2-4. On November 28, 2023, the trial court denied Appellant's PCRA petition, opining the petition was premature. **See** Order, 11/28/23.

In his first issue, Appellant argues the Commonwealth did not present sufficient evidence to establish that Appellant was the perpetrator of the crimes charged. *See* Appellant's Brief at 11. Specifically, Appellant argues:

> [W]hile accepting that there may be some circumstantial proof that would tend to implicate [Appellant] in the[] robbery[,] … the evidence, taken as a whole, does not accurately and properly identify [Appellant] as the perpetrator. [Ms. Shoor] failed to identify [Appellant] as the perpetrator and other evidence pertinent to the alleged robbery, namely the screwdriver, was never recovered nor discovered on the person of [Appellant]. [Appellant] believes that the evidence, taken as a whole, simply does not prove his involvement ….

*Id.*

Initially, we consider whether Appellant has preserved his sufficiency challenge for our review. To preserve a challenge to the sufficiency of the evidence, "an appellant's [Pa.R.A.P.] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (citation omitted). "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (citation omitted). If an appellant fails to specify such elements, the sufficiency claim is deemed waived. *See id.*; *see also Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (courts may not act as counsel for a party).

In his Rule 1925(b) statement, Appellant baldly alleged, "[t]he trial court erred in denying [Appellant's] motion for judgment of acquittal as the evidence at trial was insufficient to support the convictions." Concise Statement, 2/21/24, ¶ 15 (some capitalization modified). As Appellant failed to comply with the above precedent, his sufficiency claim is waived. **See Garland**, 63 A.3d at 344.

Even if Appellant had preserved his sufficiency claim, we would conclude it lacks merit. The standard of review for sufficiency challenges is well settled:

> [A]n appellate court should determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to allow the fact finder to conclude that the Commonwealth established the challenged criminal element of the offense beyond a reasonable doubt.

**Commonwealth v. Stevenson**, 283 A.3d 196, 205 n.3 (Pa. 2023). "[T]he Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence[.]" **Commonwealth v. Yandamuri**, 159 A.3d 503, 514 (Pa. 2017) (citation omitted). Further, "[t]his Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed." **Commonwealth v. McFarland**, 278 A.3d 369, 381 (Pa. Super. 2022) (quotation omitted).

Appellant solely challenges the sufficiency of the Commonwealth's proof with respect to identification. **See** Appellant's Brief at 11.

This Court has stated:

In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes. Evidence of identification need not be positive and certain to sustain a conviction. As our Supreme Court has stated[,] "any indefiniteness and uncertainty in the identification testimony goes to its weight. **Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence**." *Commonwealth v. Hickman*, … 309 A.2d 564, 566 ([Pa. ]1973) (citations omitted).

*Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa. Super. 2018) (some quotation marks and citations omitted; emphasis added).

Concerning robbery under Crimes Code Section 3701(a)(1)(ii), "the Commonwealth must establish that in the course of committing a theft, the defendant threatens another with or intentionally puts him in fear of immediate serious bodily injury." *Commonwealth v. Ouch*, 199 A.3d 918, 923 (Pa. Super. 2018) (citation and quotation marks omitted); *see also* 18 Pa.C.S.A. § 3701(a)(1)(ii). "The Commonwealth need not prove a verbal utterance or threat to sustain a conviction under Section 3701(a)(1)(ii)." *Id.* at 924 (citation omitted). "It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety." *Id.* (citation omitted).

"Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. "Bodily injury" is the "[i]mpairment of physical condition or substantial pain." *Id.* § 2301.

A person is guilty of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." *Id.* § 2702(a)(4).

A person is guilty of simple assault if he "negligently causes bodily injury to another with a deadly weapon." *Id.* § 2701(a)(2).

A person is guilty of theft by unlawful taking if he "unlawfully takes, or exercises unlawful control over, moveable property of another with intent to deprive him thereof." *Id.* § 3921(a). "Moveable property" is defined as "property the location of which can be changed[.]" *Id.* § 3901.

Finally, a person is guilty of false identification to law enforcement if he

> furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law.

*Id.* § 4914(a).

The trial court addressed and rejected Appellant's sufficiency claim in its Rule 1925 opinion:

> [A]ppellant was apprehended within minutes of the attack on Ms. Shoor, attempting to evade the police by traversing the Jordan Creek. [*See Commonwealth v. Perez*, 220 A.3d 1069, 1078 (Pa. Super. 2019) (*en banc*) (noting that flight from the scene of a crime can constitute circumstantial evidence of consciousness of guilt).] The testimony from the trial revealed that the 9-1-1 call was received at 10:25 p.m., and [A]ppellant was fished out of the creek at 10:36 p.m. It is also significant that the location where [A]ppellant was apprehended is not a well-traveled area, nor a place for fishing or swimming. On the night of [A]ppellant's apprehension, no one was observed there except [A]ppellant.

Most importantly, when [Appellant] was apprehended, in his possession was Ms. Shoor's distinctive purple coin. It was described by [Ms. Shoor] as a "purple and gold coin" with "purple glitter." On the back was a "serenity prayer." It was housed in a leather-like case, and during the attack, it was ripped from her belt. When it was returned by the police after it was retrieved from [A]ppellant, the strap was torn.

The surveillance video from the Americus Hotel depict[ed] Ms. Shoor's attacker wearing a red sweatshirt and black hat. Detective Wega also observed [A]ppellant remove the red sweatshirt before he entered the Jordan Creek. Both the red sweatshirt, hat and Americus hotel envelopes were located in close proximity to each other in the wooded area adjacent to the Linden Street [B]ridge.

[A]ppellant in this appeal does not seem to contest that Ms. Shoor was attacked and robbed, as were the employees of the Americus Hotel. Instead, the thrust of [A]ppellant's argument is based on [Ms. Shoor's] inability to identify [A]ppellant, the failure to recover the screwdriver from the woods, and a minor discrepancy in the initial description which said the attacker wore jeans. As to that latter point, a review of the video surveillance from the Americus Hotel shows a red hood[ed sweatshirt] and shorts. In light of the overwhelming circumstantial evidence recited above, including [Appellant's] apprehension approximately eleven (11) minutes after the robbery, his possession of Ms. Shoor's purple coin, his clothing match, and his flight from Detective Wega and other officers into the depths of the Jordan Creek, [A]ppellant's sufficiency argument is meritless.

Trial Court Opinion, 3/8/24, at 8-9 (footnotes and emphasis omitted).

The record supports the trial court's factual findings, and its legal conclusions are sound. Our review of the record discloses the following: Detective Wega testified that the Americus Hotel is "in close proximity to the Detectives Bureau," which is where Detective Wega was located when he heard the robbery report on his radio. N.T., 8/23/24, at 76 (some

capitalization modified). Moments later, after Detective Wega exited the Detectives Bureau, he observed Appellant, "walking from the area of the Americus Hotel with the description that was given out [through] the comm[unication] center …." ***Id.*** at 82. As soon as Detective Wega yelled in Appellant's direction, Appellant gave flight. ***See id.*** at 83. During the foot pursuit, "there was money coming out of [Appellant's] pockets, and also as [Detective Wega] was running through the street[, he] could see more money in the center of the street." ***Id.*** at 95. In an effort to evade police, Appellant jumped off of a bridge, falling approximately 25 to 30 feet. ***See id.*** at 101. Further, Detective Wega observed Appellant discard his red hooded sweatshirt and black hat, and wade into the Jordan Creek. ***See id.*** at 106. Upon apprehension, law enforcement found Appellant in possession of Ms. Shoor's distinctive, purple AA coin. ***See id.*** at 123.

Considering the foregoing in the light most favorable to the Commonwealth, we agree with the trial court that the Commonwealth presented sufficient evidence to prove, beyond a reasonable doubt, that Appellant was the perpetrator of the crimes of which he was convicted. ***See Stevenson***, 283 A.3d at 205 n.3. The lack of eyewitness identification is not fatal to the Commonwealth's case in view of the overwhelming circumstantial evidence establishing Appellant's guilt. ***See Yandamuri***, 159 A.3d at 514; ***see also Smyser***, 195 A.3d at 915; ***Commonwealth v. Robertson***, 874 A.2d 1200, 1206 (Pa. Super. 2005) ("Even if the Commonwealth presented

only circumstantial evidence and offered no positive identification of the assailant, we may not weight the evidence and substitute our judgment for the fact-finder as long as the evidence was sufficient to prove [the defendant's] guilt."). Accordingly, if preserved, Appellant's first issue would entitle him to no relief.

In his second issue, Appellant challenges the weight of the evidence supporting his convictions.[5] Appellant essentially repeats his sufficiency argument, alleging "the weakness of the testimony identifying [Appellant] as the perpetrator of the burglary was so tenuous … that his conviction should be overturned …." Appellant's Brief at 12.

The Commonwealth counters:

> [Appellant's] verdict hardly shocks the conscience. … Simply because the jury credited and drew reasonable inferences based on all of the evidence presented does not render the jury's verdict in this case unjust. [Appellant] took full advantage of his opportunity to discredit the Commonwealth's witnesses and challenge the Commonwealth's evidence. That the jury resolved evidence in the favor of the Commonwealth was not improper, but rather was its prerogative.

Commonwealth Brief at 17 (citation omitted).

We review a trial court's ruling on a weight challenge for an abuse of discretion. **See Commonwealth v. Banniger**, 303 A.3d 1085, 1095 (Pa. Super. 2023); **see also id.** ("[A]n abuse of discretion is not merely an error

_____

[5] Appellant preserved this issue, as required by Pa.R.Crim.P. 607, by raising it with the trial court in a timely post-sentence motion. **See** Post-Sentence Motion, 11/2/23, ¶¶ 20-21.

in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law." (citation omitted)).

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.
>
> One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice. Thus, only where the facts and inferences disclose a **palpable abuse of discretion** will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

*Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (internal citations and quotation omitted; emphasis in original); *see also Commonwealth v. Smith*, 146 A.3d 257, 265 (Pa. Super. 2016) (stating in order for an appellant to prevail on a weight challenge, he must establish that the evidence supporting a conviction is "so tenuous, vague, and uncertain that the verdict shocks the conscience of the court." (citation omitted)). Further, "the fact-finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses[.]" *Commonwealth v. James*, 297 A.3d 755, 768 (Pa. Super. 2023) (citation omitted).

In rejecting Appellant's weight claim, the trial court explained:

- 13 -

> [A]ppellant was apprehended within minutes of the robbery after discarding the clothing matching the description of the robber, and in possession of [Ms. Shoor's] purple coin. It is only when the evidence is "so one-sided or so weighted in favor of acquittal that the verdict shocks one's sense of justice," [that] a new trial would be warranted. ***Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. 2013). [A]ppellant is unable to point to any facts which are "so clearly of greater weight that to ignore them … is to deny justice." To find otherwise[] would require this [c]ourt to believe in the short time between the robbery, flight, and apprehension, someone else was overlooked who matched the clothing description of the robber and somehow transferred the purple coin to [A]ppellant, or as he was fleeing, [Appellant] found it and thought it would make a keepsake. A review of the facts does not permit this [c]ourt to discern any basis to exercise its discretion and provide [A]ppellant with a new trial.

Trial Court Opinion, 3/8/24, at 11-12.

Upon review, the trial court's reasoning is supported by the record, and we discern no abuse of its discretion in rejecting Appellant's weight claim. ***See Banniger***, 303 A.3d at 1095. Although neither Ms. Shoor nor the Americus Hotel employees were able to identify Appellant, substantial circumstantial evidence supported Appellant's convictions. This Court will not reweigh the evidence presented to the fact finder. ***See Commonwealth v. Williams***, 255 A.3d 656, 581 (Pa. Super. 2021) ("[I]t is not the position of this Court to reweigh the evidence or substitute our own judgment for that of the fact finder[.]" (quotation marks and citation omitted)); ***see also James***, 297 A.3d at 768. Accordingly, Appellant's second issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/5/2024