J-S41008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                        :            PENNSYLVANIA
                                          :
            v.                                :
                                          :
CHRISTOPHER IPINA                     :
                                          :
            Appellant                  :     No. 788 EDA 2024

Appeal from the Judgment of Sentence Entered October 6, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006490-2019

BEFORE:  MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:             **FILED DECEMBER 05, 2024**

Christopher Ipina (Appellant) appeals from the judgment of sentence entered following his nonjury convictions of aggravated assault – causing serious bodily injury, possessing instruments of a crime (PIC), simple assault, and recklessly endangering another person (REAP).[1]  We affirm.

The trial court summarized the underlying factual history:

On July 15, 2019[,] at approximately 7:30 [p.m.], Milton Osbourne (hereinafter "Mr. Osbourne") returned from work to his home at 5209 Whitaker Avenue[,] Philadelphia, PA.  There he encountered [] Appellant, [Appellant's] father [(Oscar)], and another male (later identified as Renata Creta (hereinafter "Mr. Creta")[),]) working on a car directly in front of [Mr. Osbourne's] property.  In this block of rowhomes, Mr. Osbourne's house was next door to [Appellant's] residence.  There was a history of "bad blood" between the neighbors, including a more recent issue involving Mr. Osbourne's missing patio umbrella.  Mr. Osbourne

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 907(a), 2701(a), 2705.

spoke to … Oscar [] about the umbrella. The discussion became heated as Appellant and Mr. Creta joined in, then all the men were "hollering racial obscenities at each other." N.T., 4/21/23, at 21, 27.

Mr. Osbourne eventually continued into his home. While inside he "put on his work[]out gloves and tried to do push-ups[,]" and attempted to "calm down" with exercise. ***Id.*** at 24-25. … Unable to calm himself[,] and feeling disrespected, Mr. Osbourne went back outside to continue the verbal exchange.

Upon exiting his home, Mr. Osbourne encountered Mr. Creta[,] who "jumped out of nowhere[,]" and a verbal argument ensued between [Mr. Osbourne and Mr. Creta]. ***Id.*** at 28. [Appellant and Oscar were also outside and involved in the conflict. ***See id.*** at 29-30.] Mr. Osbourne observed Oscar [] hand Appellant something and then Appellant stabbed [Mr. Osbourne] in the back. Simultaneously, [] Mr. Creta also began to physically assault him, and Mr. Osbourne attempted to defend himself. After the stabbing, Mr. Osbourne retreated into his home and was transported via ambulance to the hospital. Upon arrival he was designated "Level 1 Trauma," then admitted for over 2 days. ***Id.*** at 39-40. The injuries he sustained included: four stab wounds (two in the midline thoracic back, one in the right axilla, and one in the right gluteus); and a 4-centimeter liver laceration within the right hepatic lobe.

Trial Court Opinion, 4/9/24, at 3-4 (some record citations and parentheses omitted).

On September 19, 2019, the Commonwealth filed a criminal information charging Appellant with, *inter alia*, the above offenses. The matter proceeded to a nonjury trial on April 21, 2023. The trial court summarized the testimony adduced at trial:

Mr. Osbourne conceded he "drank a few beers" after work, prior to coming home before the incident occurred[,] and indicated he "felt buzzed" but "didn't feel drunk." He further qualified this assessment: "My tolerance is pretty good. It's like more frequent.

Like I don't know the tolerance level, but it was a pretty high tolerance level." [N.T., 4/21/23,] at 43-44. …

Charlene Howard (hereinafter "Ms. Howard")[, who] resided with Mr. Osbourne on the date of the incident[, is the mother of Mr. Osbourne's child,] and was present when he came home. *Id.* at 14. [Ms. Howard] initially heard arguing and went to the door to observe, then Mr. Osbourne came inside "angry … trying to calm himself down." *Id.* at 71-74. Ms. Howard watched him exercise wearing his weight[]lifting gloves with the finger parts cut out "doing push-ups and so forth." *Id.* at 74. Eventually, she saw Mr. Osbourne exit the home. Her view was obscured through a window, but she saw a group of people come together that "looked like they were fighting." *Id.* at 75. Shortly thereafter, Mr. Osbourne came back to the door saying, "they stabbed me, they stabbed me[,]" and [Ms. Howard] called the police and an ambulance. *Id.* at 75-76. Ms. Howard further testified that Mr. Osbourne did not appear to be intoxicated that evening. *Id.* at 84.

[Philadelphia Police] Officer Erica Myers testified that she responded to the 5200 block of Whitiker Avenue in response to the stabbing. Upon arrival[,] she placed [] Appellant in handcuffs while he screamed[,] "it was self-defense." …

[Mr. Creta] testified he, [] Appellant and a female mechanic [(Kimberly)[2]] were looking at [Oscar's] car[ prior to the stabbing]. [Mr. Creta] did not believe [Oscar] was present. *Id.* at 97-98. Mr. Creta indicated he was involved in the altercation with Mr. Osbourne and Appellant[,] which began over an accusation that Appellant stole an umbrella. [Ms. Howard] persuaded [Mr. Osbourne to return to their] home, but [Mr. Osbourne] then returned wearing a muscle shirt and "cutoff gloves with plastic hard tops … workout gloves, or motorcycle gloves." [*Id.* at 99.] Mr. Creta stated he attempted to diffuse the situation[,] when Mr. Osbourne hit him in the face. *Id.* at 113. Appellant was also involved in the fight and [the] three of them landed "on the ground rolling up and down." *Id.* at 113-15. The fight lasted less than five minutes and ended when "[Mr. Osbourne] stopped fighting." *Id.* at 116-17. Mr. Creta never saw Appellant with a weapon.

_____

[2] The record does not disclose Kimberly's surname.

….

Five character witnesses were presented via stipulation on behalf of Appellant[,] who would each [have] testif[ied] that [Appellant] enjoys a "great reputation to be an honest person and law[-]abiding citizen." *Id.* at 152-54.

Appellant testified that[,] on the date of the incident[,] he was present with Mr. [Creta] and [Kimberly]. [Oscar] possibly was or was not at the scene.[FN1] Appellant saw Mr. Osbourne walk into his home then come back outside five minutes later, using racial slurs, and accusing [Appellant's] family of stealing [Mr. Osbourne's] umbrella. *Id.* at 158, 165. When Mr. Osbourne walked down his steps, he immediately began throwing punches [at Mr. Creta] and Appellant. *Id.* at 162. Mr. Osbourne repeatedly stated, "I'm going to kill you[,] to [Appellant] and [Mr. Creta]." Appellant indicated: "I was in fear for my life, so I had to do what I had to do to defend myself." *Id.* He saw Mr. Osbourne wearing "brass gloves or motorcycle gloves," and the three of them fell to the ground. Appellant stressed "[Mr. Osbourne] is way bigger than me." *Id.* at 164. Appellant ardently testified: "I had to stab him," … emphasizing[,] "I was defending myself … because I was in fear for my life. He's a much bigger guy. I'm way shorter than him[,] so I had to defend myself." *Id.* at 167.

---

[FN1] Appellant's testimony regarding Oscar [] is unclear. Initially[, Appellant] adamantly stated [Oscar] was not present[,] then indicated [Oscar] was present for the [verbal alteration], but not the [physical alteration]. [N.T., 4/21/23,] at 158, 165.

Trial Court Opinion, 4/9/24, at 4-6 (some record citations modified; one footnote added; one footnote in original, renumbered).

At the conclusion of trial, the trial court convicted Appellant of the above-described offenses. The trial court deferred sentencing for the preparation of a presentence investigation report. On October 6, 2023, the

trial court sentenced Appellant to an aggregate four to eight years in prison.[3]

On October 15, 2023, Appellant filed a post-sentence motion (PSM) challenging (1) the sufficiency of the evidence, (2) the weight of the evidence, and (3) the discretionary aspects of the trial court's sentence. PSM, 10/15/23, at 2-5. Additionally, Appellant requested an extension of time to supplement his PSM. *Id.* at 5. The trial court took no action on Appellant's request for an extension of time to supplement his PSM. On December 17, 2023, Appellant filed an amended PSM, which included the additional argument that the Commonwealth failed to present sufficient evidence to disprove Appellant's justification defense. Amended PSM, 12/17/23, ¶ 10.

On February 27, 2024, the clerk of courts entered an order denying Appellant's October 6, 2023, PSM by operation of law. On March 14, 2024, Appellant timely filed a notice of appeal.[4] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

_____

[3] The trial court sentenced Appellant to two-and-one-half to five years in prison for PIC, and a concurrent four to eight years in prison for aggravated assault. The trial court imposed no further penalty for Appellant's simple assault and REAP convictions.

[4] Pursuant to Pennsylvania Rule of Criminal Procedure 720(B)(3)(a), the trial court "shall decide the [PSM], including any supplemental motion, within 120 days of the filing of the motion. If the judge fails to decide the motion within 120 days, … the motion shall be deemed denied by operation of law." Pa.R.Crim.P. 720(B)(3)(a). Here, Appellant filed his amended PSM beyond the 10-day time limit for filing post-sentence motions and without leave of the trial court. *See* Pa.R.Crim.P. 720. Therefore, the 120-day period for a decision on Appellant's original PSM expired on February 12, 2024. The clerk, *(Footnote Continued Next Page)*

Appellant presents the following issues:

1. Whether the evidence was insufficient to convict [Appellant] of all charges because the Commonwealth failed to introduce sufficient evidence to disprove [Appellant's] claim of justification beyond a reasonable doubt?

2. Whether the trial court erred in denying the [PSM] for a new trial because the verdict was against the weight of the evidence?

Appellant's Brief at 4.

Appellant first argues his convictions cannot stand because "the Commonwealth failed to disprove [Appellant's] claim of justification[.]" *Id.* at 13. Appellant concedes that he stabbed Mr. Osbourne in the back, but argues "that[,] alone[,] does not show that [Appellant] did not act in self-defense or defense of [Mr. Creta]." *Id.* at 14. Appellant continues:

Under [*Commonwealth v.*] *Bennett*, [303 A.2d 220 (Pa. Super 1973),] the [trial c]ourt does not have to accept absurd, inconsistent, impossible testimony from someone who was so drunk they would not have accurately remembered the incident due to problems with perception. [Appellant] and Mr. Creta both testified to self-defense and defense of others[,] as they both feared for their lives. [Mr. Osbourne] drunkenly attacked them

---

however, failed to enter an order deeming the motion denied on that date. *See* Pa.R.Crim.P. 720(B)(3)(c) ("When a [PSM] is denied by operation of law, the clerk of courts shall forthwith enter an order on behalf of the court, and … forthwith shall serve a copy of the order … that the [PSM] is deemed denied."). Under these circumstances, we deem Appellant's appeal timely filed. *See* Pa.R.Crim.P. 720(A)(2)(b) (where a defendant files a timely PSM, "the notice of appeal shall be filed… within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion[.]"); *see also Commonwealth v. Braykovich*, 664 A.2d 133, 138 (Pa. Super. 1995) (a court breakdown occurs when the trial court clerk fails to enter an order deeming a PSM denied by operation of law).

with brass knuckles[5] that he retrieved from [his residence] specifically for the purpose of going back out and fighting[,] while yelling that he was going to kill [Appellant and Mr. Creta]. Accordingly, the trial court erred in finding [Appellant] guilty of any of the charges ….

*Id.* at 20 (footnote added).

The Commonwealth counters,

[Appellant's] use of deadly force was not justified. [Appellant] was fixing [Oscar's] car in front of [Mr. Osbourne's] home when [Mr. Creta] and [Mr. Osbourne] got into a fistfight. [Appellant] inserted himself into the fray, turning a one-on-one[,] unarmed fistfight into a two-on-one fight involving a deadly weapon. Even though [Appellant] and [Mr. Creta] outnumbered the unarmed [Mr. Osbourne], [Appellant] proceeded to stab [Mr. Osbourne] four times in the back with a knife. Furthermore, [Appellant] admitted that he lived right next to [Mr. Osbourne's] house and could have easily retreated, but chose not to do so.

Commonwealth Brief at 7 (record citations omitted).

A challenge to the sufficiency of the evidence "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Peters***, 320 A.3d 1231, 1236 (Pa. Super. 2024) (*en banc*) (quoting ***Commonwealth v. Packer***, 168 A.3d 161, 166 (Pa. 2017)).

Our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable

_____

[5] During defense counsel's cross-examination, Mr. Osbourne vehemently and repeatedly denied employing brass knuckles in the fight. **See** N.T., 4/21/23, at 48, 50, 62, 63; **see also id.** at 74 (Ms. Howard testifying Mr. Osbourne was wearing "weight-lifting gloves"); **id.** at 99 (Mr. Creta describing Mr. Osbourne's gloves as having "hard plastic tops"); **id.** at 164 (Appellant testifying Mr. Osbourne was wearing "brass gloves or motorcycle gloves").

inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.

In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Id.* (citations and brackets omitted).

A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). "The intent to cause serious bodily injury may be proven by direct or circumstantial evidence." *Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006) (citation omitted). Further, "specific intent to cause serious bodily injury may be inferred from the use of a deadly weapon upon a vital part of the body." *Commonwealth v. McCalman*, 795 A.2d 412, 415 (Pa. Super. 2002) (citing *Commonwealth v. Nichols*, 692 A.2d 181, 185 (Pa. Super. 1997)).

"Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or

organ." 18 Pa.C.S.A. § 2301. "Bodily injury" is the "[i]mpairment of physical condition or substantial pain." *Id.* § 2301.

A person is guilty of PIC "if he possesses any instrument of crime with intent to employ it criminally." *Id.* § 907(a); *see also id.* § 907(d) (defining "instrument of crime").

A person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" *Id.* § 2701(a)(1).

A person is guilty of REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." *Id.* § 2705.

Self-defense and defense of others are defenses of justification, which is a complete defense to criminal liability. *See id.* §§ 502, 505, 506.

> [A]s provided by statute and as interpreted through our case law, to establish the defense of self-defense or defense of others it must be shown that: a) the slayer or the other he seeks to protect was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have reasonably believed that he or the other he seeks to protect was in imminent danger of death or great bodily harm, **and that there was a necessity to use such force in order to save himself or the other therefrom**; and c) the slayer or the other he seeks to protect did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Hornberger*, 74 A.3d 279, 284-85 (Pa. Super. 2013) (brackets and citation omitted; emphasis in original). The Commonwealth has the burden of disproving a claim of self-defense and defense of others beyond

a reasonable doubt by establishing that at least one of the three above-mentioned elements is absent. ***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1124 (Pa. 2012).

This Court has stated:

[T]he use of deadly force[6] itself cannot be viewed in isolation with the victim as the sole physical aggressor and [the defendant] acting in responsive self-defense. This would be an incomplete and inaccurate view of the circumstances for self-defense purposes. To claim self-defense, the defendant must be free from fault in provoking or escalating the altercation that led to the offense, before the defendant can be excused from using deadly force. Likewise, **the Commonwealth can negate a self-defense claim by proving the defendant "used more force than reasonably necessary to protect against death or serious bodily injury."**

***Commonwealth v. Smith***, 97 A.3d 782, 787 (Pa. Super. 2014) (citations, emphasis, brackets and some quotation marks omitted; emphasis and footnote added).

When the defendant's own testimony is the only evidence of self-defense [or defense of others], the Commonwealth must still disprove the asserted justification and cannot simply rely on the [fact finder's] disbelief of the defendant's testimony…. If there are other witnesses, however, who provide accounts of the material facts, it is up to the fact finder to reject or accept all, part or none of the testimony of any witness. The [victim] can serve as a witness to the incident to refute a self-defense [or defense of others] claim. **Although the Commonwealth is required to disprove a claim of self-defense [or defense of others] arising from any source beyond a reasonable doubt, a [fact**

_____

[6] Instantly, it is undisputed that Appellant employed deadly force. ***See Commonwealth v. Jones***, 332 A.2d 464, 466 (Pa. Super. 1974) (holding that "wielding a knife certainly amounts to the use of deadly force" in nonfatal altercation).

**finder**] **is not required to believe the testimony of the defendant who raises the claim.**

*Id.* at 788 (emphasis added; citations and quotation marks omitted); *see also Commonwealth v. Jones*, 271 A.3d 452, 458 (Pa. Super. 2021) ("The finder of fact is not required to believe the defendant's testimony that he thought that he was in imminent danger and acted in self-defense [or defense of others]." (citation omitted)).

The trial court addressed and rejected Appellant's justification argument in its Rule 1925(a) opinion:

> Appellant's claim [that] his actions were in self-defense [or defense of others is] without merit. In the instant matter, the [trial c]ourt found Appellant's version of the incident inconsistent, implausible, and incredible. To the contrary, Mr. Osbourne's testimony was very candid and direct as to the initiation of the argument and the altercation that followed. Further[,] the testimony and photographs demonstrate the location of Mr. Osbourne's injuries prove he was stabbed from ***behind*** – in the back near his spine and rear side/abdominal area, substantiating his assertion [] Appellant was the physical aggressor. ***See*** Exhibit X – Photograph C-1(b). The circumstances failed to support Appellant's assertion that such level of force was necessary to avoid death or serious bodily injury.
>
> Appellant conceded Mr. Osbourne did not have a weapon. N.T.[, 4/21/23,] at 170. Nor did the gloves, as described[,] qualify as a weapon. [***Id.***] at 24-26, 74, 99, 101, 164. Additionally, Appellant was assaulting Mr. Osbourne with the assistance of Mr. Creta, and Appellant agreed it was a two-against-one fight. [***Id.***] at 172. The record also reflects Mr. Osbourne (in his fifties) was significantly older than his assailants (in their twenties) and more than likely inebriated[,] rendering him more vulnerable to attack. As such there is no basis to support Appellant's claim [that] he was "in fear for [his] life," warranting this use of deadly force.

Further, Appellant conceded he had the ability to retreat from the incident. Appellant testified he could have run to his house within "under a minute" to avoid the confrontation[,] but failed to do so. Mr. Osbourne was technically on his own property when the altercation occurred. This [] confirms, if Appellant felt threatened, he retained the physical ability—and thus the duty—to retreat, since "complete safety" was achievable behind his own door.

Trial Court Opinion, 4/9/24, at 11-12 (some citations omitted; emphasis in original). We agree.

Our review confirms the Commonwealth presented sufficient evidence to disprove Appellant's justification defenses beyond a reasonable doubt. Mr. Osbourne testified that he did not initiate the physical altercation. N.T., 4/21/23, at 29. Instead, while Mr. Osbourne was engaged in a "verbal confrontation" with Mr. Creta, Appellant stabbed Mr. Osbourne in the back. *Id.* at 31. Mr. Creta testified that Mr. Osbourne threw the first punch, but that thereafter the two exchanged **unarmed** blows. *See id.* at 123; *see also id.* at 113 (describing the altercation as a "tussle"); *id.* at 164 (Appellant also describing Mr. Creta and Mr. Osbourne as "tussling"). Appellant testified that during the altercation, Mr. Osbourne struck him "on the side of my shoulder" **with his fist**. *Id.* at 166. Although Appellant testified that he feared for his life, *see id.* at 162, the fact-finder had no obligation to credit that testimony. *See Jones*, 271 A.3d at 458.

Appellant focuses almost exclusively on his claim that Mr. Osbourne provoked the fight that led to Appellant stabbing Mr. Osbourne. *See* Appellant's Brief at 18 ("[T]he real dispute here was whether [Mr. Osbourne]

- 12 -

threw the first punch and attacked [Appellant] and Mr. Creta ….").  However, even assuming, *arguendo*, that Mr. Osbourne was the instigator of the physical altercation, Appellant fails to explain how he was justified in stabbing Mr. Osbourne in the back, four times, during a fight where Mr. Osbourne was unarmed and outnumbered.  **See Smith**, 97 A.3d at 787 (holding the Commonwealth can negate a justification claim by establishing a defendant "used more force than reasonably necessary to protect against death or serious bodily injury." (citation omitted)).  Because the Commonwealth disproved Appellant's justification defenses beyond a reasonable doubt, Appellant's sufficiency challenge does not merit relief.

In his second issue, Appellant challenges the verdicts as against weight of the evidence.[7]  **See** Appellant's Brief at 20-25.  Appellant reiterates the arguments he set forth in support of his sufficiency claim, and, in sum, faults the trial court for not crediting his version of events over Mr. Osbourne's testimony.  **See id.** at 24.  Appellant contends that, "[g]iven the record, the verdict shocks the conscience.  [Mr. Osbourne] instigated this incident, and [Appellant] acted to defend himself and others."  **Id.** at 25.

The Commonwealth responds that the trial court properly exercised its discretion in rejecting Appellant's weight claim.  **See** Commonwealth Brief at 9.  The Commonwealth argues that the "evidence was not vague or uncertain.

---

[7] Appellant preserved this issue, as required by Pa.R.Crim.P. 607, by raising it with the trial court in a post-sentence motion.  **See** PSM, 10/15/23, ¶ 5-10.

[Appellant's] argument to the contrary requires believing his testimony over [Mr. Osbourne's]." *Id.* According to the Commonwealth, "[t]he fact that the [trial] court resolved the conflicts in favor of the Commonwealth was not shocking." *Id.*

We review a trial court's ruling on a weight challenge for an abuse of discretion. *See Commonwealth v. Banniger*, 303 A.3d 1085, 1095 (Pa. Super. 2023); *see also id.* ("[A]n abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law." (citation omitted)).

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

> One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice. Thus, only where the facts and inferences disclose a **palpable abuse of discretion** will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

*Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (internal citations and quotation omitted; emphasis in original). Further, "the fact-finder is free to believe all, part, or none of the evidence and to determine the credibility of

the witnesses[.]" ***Commonwealth v. James***, 297 A.3d 755, 768 (Pa. Super. 2023) (citation omitted).

In rejecting Appellant's weight challenge, the trial court explained:

[T]he documentation in this case was compelling and substantial, and strongly supported the judgment. The [trial c]ourt found Mr. Osbourne's testimony[,] in conjunction with the injuries / medical records presented[,] to be credible[,] and Appellant's unsupported version of events unconvincing.

… [T]he decision in this case is consistent with the facts[,] and was not so contrary to the evidence as to astonish one's sense of justice. The evidence was not so tenuous, vague, and uncertain that the decision shocks the conscience of the court. [***See Commonwealth v.***] ***Talbert***, 129 A.3d [536,] 545-46 [(Pa. Super. 2015)]. Therefore, Appellant's claim that the ruling was against the weight of the evidence [] lacks merit.

Trial Court Opinion, 4/9/23, at 13.

Upon review, we conclude the trial court properly exercised its discretion in denying Appellant's weight claim. ***See Banniger***, 303 A.3d at 1095. The trial court found Mr. Osbourne's testimony "candid and direct," whereas Appellant's account was "inconsistent, implausible, and incredible." Trial Court Opinion, 4/9/23, at 11; ***see also Commonwealth v. Roberts***, 133 A.3d 759, 767 (Pa. Super. 2016) ("[T]he finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." (citation omitted)). Accordingly, Appellant's second issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/5/2024