J-S06025-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                           :            PENNSYLVANIA
                                              :
                        v.                        :
                                              :
                                              :
JANLYNN M. JORDAN                  :
                                              :
                   Appellant          :    No. 1427 WDA 2024

Appeal from the Judgment of Sentence Entered September 24, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0005788-2023

BEFORE: KUNSELMAN, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                 **FILED: May 15, 2026**

Janlynn M. Jordan ("Jordan") appeals from the judgment of sentence following the trial court's denial of her post-sentence weight of the evidence challenge to her convictions of terroristic threats and harassment.[1] We affirm.

On September 24, 2024, Jordan appeared for separate non-jury trials: one for criminal mischief and a second for intimidation, terroristic threats, and harassment. At the criminal mischief trial, Jasmine Gibson ("Jasmine") testified that on March 14, 2023, a window in the house where she and her teenaged daughter ("M.G.") lived, but were moving from, was broken. *See* N.T., 9/24/24, at 7-9, 15-16. Jasmine testified M.G. had been dating Jordan's daughter ("J.J."), and the breakup of that relationship became tumultuous,

---

[*] Former Justice specially assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. §§ 2706(a)(1), 2709(a)(1).

including a series of harassing phone calls. *See id*. at 10-11. Jasmine testified M.G. played for her a phone call she recorded in which Jordan said, "Hoes" would be cold that night because their windows were "busted out." *Id*. at 11-14.

M.G. testified Jordan, her ex-girlfriend's mother, called her and said, "You hoes are going to sleep cold tonight." *Id*. at 22. At the conclusion of the Commonwealth's evidence, the trial court granted a judgment of acquittal. *See id*. at 28-29.[2]

Immediately thereafter, another trial was conducted on the intimidation, terroristic threats, and harassment charges. Jasmine testified that on May 2, 2023, she and M.G. were in magisterial district court concerning damage to the window of the home where the family lived. As they were leaving the courtroom, Jasmine, M.G.'s mother, lipread Jordan – the mother of M.G.'s ex-girlfriend – saying she was going to kill M.G. Jasmine testified she made a police report that day. *See* N.T., 9/24/24, at 31-33.

M.G. testified she and her mother were in court that day about windows Jordan had broken; she testified as she was leaving the magistrate's room, Jordan said to her, "Little bitch, I'm going to get you killed." *See id*. at 37-40. M.G. identified a victim-witness form she wrote and signed that day recounting Jordan's threat. *See id*. at 39-40. When the Commonwealth

---

[2] The court praised Jasmine and M.G. for their truthful testimony. *See id*. at 28.

rested its case, Jordan made a motion for judgment of acquittal, which the trial court denied. Jordan then testified she did not threaten M.G. *See id*. at 46.

At the conclusion of trial, the trial court convicted Jordan of terroristic threats and harassment,[3] and imposed a three-year term of probation. Jordan filed a post-sentence motion asserting the witnesses gave conflicting versions of events. *See* Jordan's Post-Sentence Motion, 10/17/24, at ¶¶ 10-11. The trial court denied the motion. Jordan appealed and she and the trial court complied with Pa.R.A.P. 1925.

> On appeal, Jordan presents the following issue for our review:
>
> Whether the trial court abused its discretion in denying [Jordan's] post-sentence motion requesting a new trial where the guilty verdicts for terroristic threats and harassment were against the weight of the evidence?

Jordan's Brief at 5 (capitalization standardized).

Jordan asserts the trial court abused its discretion by denying her challenge to the weight of the evidence.

When reviewing a challenge to the weight of the evidence, this Court's standard of review is as follows:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

---

[3] The trial court acquitted Jordan of intimidation.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding the facts, certain facts are so clearly of greater weight that to ignore them or give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence challenge is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Muci*, 143 A.3d 399, 410-11 (Pa. Super. 2016) (citation omitted). An abuse of discretion is not merely an error in judgment but involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. *See Commonwealth v. Arnold*, 284 A.3d 1262, 1277 (Pa. Super. 2022) (citation omitted).

One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. *See Commonwealth v. Juray*, 275 A.3d 1037, 1047 (Pa. Super. 2022) (internal citation and indentation omitted). "Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the [factfinder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another

- 4 -

opportunity to prevail." ***Commonwealth v. Sanchez***, 36 A.3d 24, 39 (Pa. 2011) (internal citation and quotations omitted).

It is the exclusive province of the factfinder to weigh inconsistencies in a witness's testimony and to make credibility determinations. ***See Commonwealth v. Izurieta***, 171 A.3d 803, 809 (Pa. Super. 2017). Indeed, this Court has explained that a new trial should not be granted because of a mere conflict in the testimony. ***See Juray***, 275 A.3d at 1047.

Jordan cites the statement in ***Commonwealth v. Banninger***, 303 A.3d 1085, 1095 (Pa. Super. 2023) (citation omitted), that "there is a logical inconsistency in asking a trial judge to conclude that his non-jury decision shocked his own conscience," and faults the trial court for not addressing her claim in greater detail. ***See*** Jordan's Brief at 14-15. Additionally, she asserts there was ill-will between the parties and there were "material and substantial" inconsistencies between the witnesses' testimony: Jasmine testified she had to lipread Jordan's threat, while M.G. said the statement was loud enough to be heard, and M.G. testified at trial that Jordan also said, "That's why I'm going to kill you," in addition to the rest of her threat. ***See id***. at 17-19.

The trial court stated that the verdict did not shock its conscience. ***See*** Trial Court Opinion, 8/20/25, at 2. It explicitly declared M.G.'s testimony to be credible and further stated it did not believe Jordan's denial that she made the threats. ***See id***. at 1.

- 5 -

The trial court did not abuse its discretion by denying Jordan's weight claim. The court expressly stated it believed M.G.'s testimony and rejected defendant's contrary testimony. That determination made by the court that presides over the case and observed the witnesses' demeanor and assess their credibility, is entitled to great deference. Jordan's assertion in her post-verdict motion that she demonstrated greater recall of the incident, see Post-Verdict Motion, 10/17/24, at 2 (unnumbered), seeks a redetermination of credibility which this Court will not do – we cannot substitute our judgment for that of the trier of fact. *See Commonwealth v. Bernarsky*, 384 A.3d 304, 322 (Pa. Super. 2025) (holding unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a weight challenge premised on credibility of trial testimony is not cognizable). That there were some discrepancies between Jasmine's testimony and M.G.'s, both of whom testified Jordan threatened M.G., does not render the verdict the product of pure conjecture. *See Juray*, 275 A.3d at 1047 (stating a party challenging the trial court's weight ruling will not be granted a new trial because of "a mere conflict in the testimony"); *Commonwealth v. Johnson*, 192 A.3d 1149, 1153 (Pa. Super. 2018) (affirming denial of weight claim premised on discrepancies in witness's testimony). Finally, notwithstanding our statement in *Banninger* about the unlikelihood a jurist will decide its own

verdict shocked its conscience, **_Banninger_** itself recognizes the trial court is charged to make that determination.[4]

Finding no merit to Jordan's claim, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/15/2026

---

[4] Moreover, allowing a trial court which sat as factfinder to rely on its credibility determinations is consistent with our deference to a trial court's right to make those determinations in jury trials.