J-S23020-23

2023 PA Super 197

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
ANTHONY J. BANNIGER :
:
Appellant : No. 1612 EDA 2022

Appeal from the Judgment of Sentence Entered May 27, 2022,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0000335-2021.

BEFORE: PANELLA, P.J., KUNSELMAN, J., and KING, J.

OPINION BY KUNSELMAN, J.: **FILED OCTOBER 11, 2023**

Anthony Banniger appeals from the judgment of sentence entered after he was convicted of rape by forcible compulsion, involuntary deviate sexual intercourse by forcible compulsion,[1] and other offenses committed against J.Z., a minor in his extended family. We affirm.

In this case we must determine whether a conviction for a sexual offense "by forcible compulsion" can stand if the victim was unconscious when the assault began. For reasons discussed herein, we hold that evidence that a defendant had intercourse with an unconscious person, without more, is insufficient to prove forcible compulsion. Such conduct is fully proscribed in other statutory subsections. However, the person's unconsciousness is a relevant circumstance as to whether the defendant used force while having

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1) and 3123(a)(1), respectively.

intercourse. Further, evidence that a victim is unable to move out of fear of a defendant can be sufficient to prove forcible compulsion.

Banniger had a non-jury trial on October 26, 2021. At trial, J.Z. testified that Banniger started touching her body with his hands when she was 10 years old, first over her clothes and then under them. The escalating physical contact rendered J.Z. unable to move: "[Banniger] would like rub all over me, like, just rub me. And I would be real disgusted, but there was nothing I could do. It was like a fear, like, a frozenness. You can't really move your body." N.T., 10/26/21, at 20.

J.Z. moved out of state at age 14. At age 15, she returned and lived in the same house as Banniger. Banniger would provide marijuana to J.Z., and they would smoke together while they were alone in the house. At times, Banniger told J.Z. that he liked her and wanted to be with her; J.Z. told Banniger to stop. After J.Z. smoked with Banniger, she went to her room to lie down. On two such occasions, Banniger proceeded to sexually assault J.Z.

In the first incident,[2] J.Z. woke up in her aunt's room. Her shorts were pulled to the side, and Banniger had his head between her legs and his tongue on and inside her vagina. J.Z. did not testify that she was frozen with fear in the first incident or that Banniger used any force in the first incident. She did not testify how long Banniger continued or how the first incident ended.

---

[2] J.Z. said the first incident described here was "the most recent one" and the second incident described here was "the second time," which "happened just like it happened the first time." N.T., 10/26/21, at 21, 26–27.

In the second incident, J.Z. woke up in her grandmother's room. Like the first time, J.Z.'s clothes were to the side and Banniger's tongue was in her vagina. Banniger then pulled J.Z.'s pants off and penetrated her vagina with his penis. As Banniger progressed, J.Z. was "frozen with fear" and "just let it happen to [her] because [she] didn't know what else to do." *Id.* at 27–28. J.Z. then "had to fight a little bit" to push Banniger off of her because "[h]e was being forceful." *Id.* at 29. J.Z. ran to another room. She later told her older sister about the abuse.

The trial court found Banniger guilty of rape by forcible compulsion, involuntary deviate sexual intercourse by forcible compulsion, unlawful contact with a minor, statutory sexual assault, corruption of a minor, indecent assault of a person less than 13, involuntary deviate sexual intercourse of an unconscious person, and sexual assault.[3] On May 27, 2022, the court sentenced Banniger to an aggregate term of 14 to 34 years of imprisonment, followed by three years of probation.

Banniger filed a post-sentence motion on June 5, 2022, which the trial court denied on June 7, 2022. Banniger timely appealed on June 15, 2022. Banniger filed a concise statement of matters complained of on appeal in compliance with Pennsylvania Rule of Appellate Procedure 1925(b). The trial court entered an opinion on October 13, 2022.

---

[3] 18 Pa.C.S.A. §§ 3121(a)(1), 3123(a)(1), 6318(a)(1), 3122.1(b), 6301(a)(1)(ii), 3126(a)(7), 3123(a)(3), and 3124.1.

Banniger presents four questions for review:

1. Was the evidence insufficient to prove Banniger guilty of involuntary deviate sexual intercourse by forcible compulsion?

2. Was the evidence insufficient to prove Banniger guilty of rape by forcible compulsion?

3. Did the trial court err by denying Banniger's request for a new trial as the weight of the evidence should have resulted in an acquittal of all charges?

4. Did the trial court err by imposing a manifestly excessive and unreasonable sentence?

Banniger's Brief at 5 (reordered).

Banniger's first two issues concern the sufficiency of the evidence. "Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Woodard***, 129 A.3d 480, 489 (Pa. 2015) (citing ***Commonwealth v. Sanchez***, 36 A.3d 24, 37 (Pa. 2011)). Our inquiry is "whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Spence***, 290 A.3d 301, 309 (Pa. Super. 2023) (quoting ***Commonwealth v. Gause***, 164 A.3d 532, 540 (Pa. Super. 2017) (*en banc*)). Further, a complainant's testimony does not need to be corroborated to constitute sufficient evidence of a sexual offense. ***Commonwealth v. Poindexter***, 646 A.2d 1211, 1214 (Pa. Super. 1994) (citing ***Commonwealth v. Gabrielson***, 536 A.2d 401 (Pa. Super. 1988)); ***see*** 18 Pa.C.S.A. § 3106.

The crimes of rape and involuntary deviate sexual intercourse are defined in relevant part as follows:

> **(a) Offense defined.**--A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:
>
>> (1) By forcible compulsion.
>>
>> (2) By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.
>>
>> (3) Who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring.
>>
>> (4) Where the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance.
>>
>> (5) Who suffers from a mental disability which renders the complainant incapable of consent.

18 Pa.C.S.A. § 3121(a) (rape).

> **(a) Offense defined.**--A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant:
>
>> (1) by forcible compulsion;
>>
>> (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
>>
>> (3) who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring;
>>
>> (4) where the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance; [or]

(5) who suffers from a mental disability which renders him or her incapable of consent[.]

18 Pa.C.S.A. § 3123(a)(1)–(5) (involuntary deviate sexual intercourse).

Both statutes require proof that a defendant engaged in a form of intercourse, as well as an additional element. "Sexual intercourse," used in Section 3121, is defined: "In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S.A. § 3101. "Deviate sexual intercourse," used in Section 3123, is: "Sexual intercourse per os or per anus[4] between human beings," as well as intercourse with an animal and certain penetration with a foreign object. *Id.*

Oral sex, intercourse per os, is included in the definitions of both sexual intercourse and deviate sexual intercourse. *Commonwealth v. Brown*, 159 A.3d 531, 534 (Pa. Super. 2017). This includes licking a vagina. *Commonwealth v. Westcott*, 532 A.2d 1140, 1145–47 (Pa. Super. 1987) (holding "penetration of the vagina by the tongue" meets these definitions); *Interest of J.R.*, 648 A.2d 28, 33 (Pa. Super. 1994) (holding "some form of oral contact with the genitalia of the female victim" sufficient for deviate sexual intercourse, even without "actual" penetration).

Vaginal sex—inserting a penis into a vagina, the "ordinary meaning" of sexual intercourse—is not included in the definition of deviate sexual

---

4 Intercourse "per os or per anus" refers to oral and anal sex. *Commonwealth v. Kelley*, 801 A.2d 551, 555 (Pa. 2002) (citing *Commonwealth v. Hitchcock*, 565 A.2d 1159 (Pa. 1989), and *Commonwealth v. Lee*, 638 A.2d 1006 (Pa. Super. 1994)).

intercourse. *See Commonwealth v. Kelley*, 801 A.2d 551, 555 (Pa. 2002) (citing *Commonwealth v. Brown*, 711 A.2d 444, 450 (Pa. 1998), for the ordinary meaning of sexual intercourse).

Under Subsections 3121(a)(1) and 3123(a)(1), the Commonwealth must prove that the defendant engaged in intercourse "by forcible compulsion." By statute, forcible compulsion includes "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S.A. § 3101. Thus, in addition to "sheer physical force or violence," forcible compulsion encompasses "an act of using superior force, physical, moral, psychological or intellectual[,] to compel a person to do a thing against that person's volition and/or will." *Commonwealth v. Gonzalez*, 109 A.3d 711, 720–21 (Pa. Super. 2015) (citing *Commonwealth v. Ables*, 590 A.2d 334, 337 (Pa. Super. 1991)). For these sexual offenses, the object of the force is "to compel a person to engage in sexual intercourse [or deviate sexual intercourse] against that person's will." *Commonwealth v. Rhodes*, 510 A.2d 1217, 1226 (Pa. 1986).

Whether a defendant used forcible compulsion depends on the totality of the circumstances, including this non-exhaustive list of factors:

> the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.

*Id.* Our courts have not specified every set of circumstances that can show forcible compulsion, which turns on the facts of each case. *Id.* at 1226.

Proof of forcible compulsion does not require evidence that the victim resisted. *Rhodes*, 510 A.2d at 1227 n.14 (citing 18 Pa.C.S.A. § 3107). This recognizes that a victim may not struggle against the attack of an assailant who can physically overpower the victim. *Commonwealth v. Lee*, 638 A.2d 1006, 1008 (Pa. Super. 1994) (citing *Commonwealth v. Gabrielson*, 536 A.2d 401, 407 (Pa. Super. 1988)). The inquiry is whether the defendant's physical, intellectual, moral, emotional, or psychological force compelled the victim to submit to intercourse against the victim's will, not whether the victim resisted the compulsion. *Rhodes*, 510 A.2d at 1226, 1227 n.14.

Similarly, the law distinguishes forcible compulsion by a defendant from a lack of consent by a victim. While "[e]ffective consent to sexual intercourse will negate a finding of forcible compulsion," forcible compulsion is "'something more' than mere lack of consent." *Commonwealth v. Buffington*, 828 A.2d 1024, 1225 (Pa. 2003) (citing *Commonwealth v. Williams*, 383 A.2d 503 (Pa. 1978)); *Gonzalez* (quoting *Commonwealth v. Smolko*, 666 A.2d 672, 676 (Pa. Super. 1995)); *see Commonwealth v. Berkowitz*, 641 A.2d 1161, 1164 (Pa. 1994) ("[W]here there is a lack of consent, but no showing of either

physical force, a threat of physical force, or psychological coercion, the 'forcible compulsion' requirement . . . is not met.").[5]

Relatedly, forcible compulsion subsumes a lack of consent. *Buffington*, 828 A.2d at 1031–32 (citing *Berkowitz*, 641 A.2d at 1165). That is, if the Commonwealth proves that a defendant exercised forcible compulsion, then it has proved that the victim did not consent. Thus, sexual assault (sexual intercourse or deviate sexual intercourse without consent) is a lesser-included offense of involuntary deviate sexual intercourse by forcible compulsion (and, by the same logic, of rape by forcible compulsion). *Id.* at 1032 (comparing 18 Pa.C.S.A. §§ 3124.1 and 3123(a)(1)). Along these same lines, proof that a defendant had intercourse with an unconscious victim implies that the victim did not consent. *Id.* (citing *Commonwealth v. Erney*, 698 A.2d 56, 58–59 (Pa. 1997), and concluding that sexual assault is a lesser-included offense of Sections 3121(a)(3) and 3123(a)(3)).

From this legal landscape, it does not follow that every person who has intercourse with an unconscious victim does so by forcible compulsion. While an unconscious victim cannot consent to intercourse, forcible compulsion requires something more than non-consent. *Buffington*, 828 A.2d at 1031–32. A victim's "mental and physical condition[]," which can include lack of

---

[5] After *Berkowitz*, the General Assembly enacted Act 10 of 1995 (Spec. Sess. 1), to establish the crime of sexual assault, codified at 18 Pa.C.S.A. § 3124.1. This statute prohibits sexual intercourse or deviate sexual intercourse without consent. It does not require proof of forcible compulsion. Act 10 also codified the definition of forcible compulsion in Section 3101, using language following *Commonwealth v. Rhodes*, 510 A.2d 1217, 1226 (Pa. 1986).

consciousness, is only one circumstance to be considered under the totality test for forcible compulsion. *Rhodes*, 510 A.2d at 1226. We therefore hold that evidence that a victim was unconscious, without more, is insufficient to prove that the defendant used "forcible compulsion." *Cf. Commonwealth v. Titus*, 556 A.2d 425, 429–30 (Pa. Super. 1989) (reaching a similar holding that a parent–child relationship, without more, is insufficient to prove forcible compulsion).

This holding fits within the statutory scheme. The General Assembly has subdivided the relevant statutes to proscribe intercourse by forcible compulsion and against an unconscious person. 18 Pa.C.S.A. §§ 3121(a)(1), (3), and 3123(a)(1), (3). These subsections cover different conduct and protect different interests of victims—the interest against being forcibly compelled to submit to intercourse and the interest against being subjected to intercourse while unconscious.[6] To presume forcible compulsion from every instance of intercourse with an unconscious person would render portions of the statutes nullities. *See, e.g.*, *Commonwealth v. Thompson*, 2 Pa.D.&C.4th 632, 655 (C.P. Phila. 1989).

Here, J.Z. described two incidents where Banniger put his tongue in her vagina. This meets the definition of deviate sexual intercourse. *Westcott*,

---

[6] Nothing here would prohibit charging a defendant under multiple subsections given the factual allegations in each case. *See Commonwealth v. Price*, 616 A.2d 681, 683–84 (Pa. Super. 1992) (finding sufficient evidence of rape by forcible compulsion and rape of an unconscious person where the victim woke up during sexual intercourse and the defendant continued penetration and physically struggled with her).

*supra*; *J.R.*, *supra*. Both incidents began while J.Z. slept after using marijuana from Banniger; J.Z. woke up to find Banniger's head between her legs. Regarding the first incident, J.Z. did not describe Banniger continuing the deviate sexual intercourse after she woke up. However, as to the second incident, J.Z. testified that she was frozen with fear as the abuse progressed.[7] She was awake and "just let it happen" because she was unsure what to do. Under the totality of the circumstances, including Banniger's extended familial relationship with J.Z., the use of marijuana with no one else at home, and J.Z.'s unconsciousness and subsequent fear that rendered her unable to move, the evidence sufficiently established that Banniger committed deviate sexual intercourse by forcible compulsion.[8] We therefore affirm this conviction.

In the second incident, J.Z. testified that Banniger pulled her pants off and penetrated her vagina with his penis. This meets the definition of sexual intercourse. *Kelley*, 801 A.2d at 555. When Banniger did this, J.Z. was frozen

---

[7] J.Z. testified that after she awoke, Banniger then proceeded to pull off her pants and put his penis in her vagina. As addressed *infra*, this is sexual intercourse. However, it does not meet the definition of deviate sexual intercourse. The relevant inquiry under Section 3123(a)(1), involuntary deviate sexual intercourse by forcible compulsion, is whether Banniger had deviate sexual intercourse—*i.e.*, oral sex—by forcible compulsion.

Here, J.Z. woke up to perceive Banniger's head between her legs, which he kept there long enough for her to feel frozen with fear before he proceeded to do other actions. Therefore, J.Z.'s fear is relevant in determining forcible compulsion for this offense.

[8] We observe that Banniger was also properly convicted of involuntary deviate sexual intercourse of an unconscious person. 18 Pa.C.S.A. § 3123(a)(3); *see Price*, 616 A.2d at 684 (finding evidence sufficient of an analogous rape charge where the victim woke up to find the defendant's penis in her vagina).

with fear, similar to how she felt when Banniger rubbed her body with his hands going back to when she was ten years old. Given that Banniger was an adult in J.Z.'s extended family, who had previously abused her, J.Z.'s testimony that she was frozen with fear during this incident was sufficient to allow the trial court to conclude that Banniger forcibly compelled J.Z. to submit to sexual intercourse against her will. We therefore affirm Banniger's conviction for rape by forcible compulsion.

Banniger's third issue concerns the weight of the evidence, which he preserved by filing a post-sentence motion for a new trial. Banniger argues that the trial court should have granted a new trial because J.Z.'s testimony was inconsistent with her previous statements, J.Z. had a motive to lie, and the Commonwealth did not introduce physical evidence or corroborating testimony. Unlike a sufficiency challenge, we review a weight challenge to determine whether the trial court abused its discretion:

> The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.
>
> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.

- 12 -

Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

*Commonwealth v. Arnold*, 284 A.3d 1262, 1277 (Pa. Super. 2022) (quoting

*Commonwealth v. West*, 937 A.2d 516, 521 (Pa. Super. 2007)).

Notably, the trial court's role changes in ruling on a post-sentence motion after a non-jury trial. "Post-trial, the court cannot re-deliberate[,] as it is no longer the fact finder." *Commonwealth v. Wilson*, 227 A.3d 928, 938 (Pa. Super. 2020) (quoting *Commonwealth v. Robinson*, 33 A.3d 89, 94 (Pa. Super. 2011)). "Although weight of the evidence claims have been addressed in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that his non-jury decision shocked his own conscience." *Commonwealth v. Wise*, No. 1145 EDA 2021, 2022 WL 2442141, at *5 (Pa. Super. July 5, 2022) (non-precedential decision). "[I]t would be highly incongruous for a trial judge presiding over a non-jury trial to find [his] own decision shocks [his] conscience. . . . [A] judge in a non-jury trial has the dual duties of determining the weight and admissibility of evidence. A trial court sitting as fact-finder is unlikely to find, in response to a post-sentence motion, that it reached a verdict contrary to the evidence." *Commonwealth v. Matthews*, No. 125 MDA 2020, 2020 WL 7047114, at *5 (Pa. Super. Dec. 1, 2020) (non-precedential decision) (Strassburger, J., concurring).

With this standard in mind, the trial court thoroughly addressed Banniger's arguments about the deficiencies in the evidence against him,

concluding that the verdict was not "shocking to the conscience." Trial Court Opinion, 10/13/22, at 15–20. We discern no abuse of discretion. As the trial court reasoned, the minor inconsistencies in J.Z.'s recollection did not disturb her testimony about the specific incidents of abuse that Banniger committed. Further, J.Z. was a witness to Banniger's crimes, and her testimony did not need to be corroborated for the court, as fact-finder, to accept her testimony as credible. Because the trial court did not abuse its discretion in denying Banniger's post-sentence motion for a new trial, Banniger's third issue fails.

Banniger's fourth issue concerns the discretionary aspects of his aggregate sentence of 14 to 34 years of imprisonment followed by three years of probation. To determine whether an appellant has invoked this Court's jurisdiction over a discretionary-aspects claim, we evaluate:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Aulisio*, 253 A.3d 338, 343–44 (Pa. Super. 2021) (quoting *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Banniger complied with the first three requirements to invoke our jurisdiction by filing a post-sentence motion to reconsider his sentence, filing a notice of appeal, and including a Rule 2119(f) statement in his brief. He urges us to find a substantial question by asserting that the trial court imposed an excessive sentence disproportionate to his conduct without considering

certain factors. Banniger's Brief at 11 (listing his "age, rehabilitative needs, traumatic childhood, mental health issues, family support, and employment history" as factors not carefully considered). "[A]n excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Akhmedov*, 216 A.3d 307, 328 (Pa. Super. 2019) (*en banc*) (quoting *Commonwealth v. White*, 193 A.3d 977, 983 (Pa. Super. 2018)). Therefore, Banniger has invoked this Court's jurisdiction, and we proceed to the merits of his claim.

Once our jurisdiction is established, we proceed to review whether the sentencing court abused its discretion, bearing in mind the following statute:

> **(c) Determination on appeal.--**The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
>> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>>
>> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>>
>> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.
>
> **(d) Review of record.--**In reviewing the record the appellate court shall have regard for:
>
>> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

- 15 -

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(c) and (d); **see Aulisio**, 253 A.3d at 344–45.

Banniger argues that the sentencing court discredited mitigating factors, including that he was physically and sexually abused as a child, received deficient treatment, obtained training and employment as a truck driver despite his prior convictions, and supported his own children. Banniger's Brief at 17–18. He further notes that his sentence was years longer than the Commonwealth's recommendation of 8 to 16 years.

The trial court noted that Banniger's sentence at each count was within the standard range of the sentencing guidelines. Trial Court Opinion, 10/13/22, at 23–25. Further, all but one term of imprisonment was ordered to run concurrently. The court explained its rationale for sentencing as follows:

> [Banniger's] sentences were reasonable considering the nature of [Banniger's] crimes. [Banniger] began sexually assaulting J.Z., who he had known for practically her entire life . . . , when she was ten years old. [Banniger's] conduct worsened as J.Z. got older to the extent that he raped J.Z. and engaged in involuntary deviate sexual intercourse without her consent when she was fifteen years old. [Banniger's] contentions that his sentences were excessive and disproportionate to his conduct and that [the sentencing court] failed to consider the sentencing guidelines are therefore without merit.
>
> [Regarding Banniger's claims that the court did not consider relevant factors, the court ordered a presentence investigation and mental health screening prior to sentencing.] At sentencing it was discovered that a mental health evaluation was never

completed for [Banniger]. [Banniger's] counsel conferred with [Banniger], who subsequently agreed to waive the mental health report.

During the sentencing hearing, [the sentencing court] heard argument from the Commonwealth and [Banniger's] sentencing counsel and observed [Banniger] when he was given opportunity to address the [court. The court] also reviewed the presentence investigation report prepared prior to sentencing, which contained relevant information about [Banniger's] character, including abuse he suffered as a child and incidents that he was involved in at several juvenile placements. Subsequently, [the court] plainly stated its reasons on the record for imposing [Banniger's] aggregate sentence and why it exceeded the sentence recommended by the Commonwealth:

> I do recognize this was a waiver trial. But what was testified to here and what happened, coupled with the defendant's background, incidents in juvenile facilities, in the state prison, repeatedly going to the state prison over and over again not for sex offenses, but for drug dealing and other things and still coming out and doing these things…
>
> You're an individual who both has ability and can perpetrate what occurred here, which did not come out for a number of years.
>
> …
>
> I give this sentence because I don't think, Mr. Banniger, until you've had years of sufficient treatment and been away [you] are safe to be around younger people. What happened here is going to have a lifelong effect on the complainant as she testified. She didn't want to bring it out. I saw the texts; I heard the testimony.
>
> What you've created because she wanted to protect others in the family by putting up with this for years, and the grooming that was involved starting with not penetration, but other things, in my opinion makes you very, very dangerous in the future.
>
> I hope you will get the treatment because you will get out, and I hope when you do get out none of this will ever happen again.

Accordingly, the record reflects that [the sentencing court] imposed [Banniger's] aggregate sentence of fourteen to thirty-four years of confinement and three years of sex offender probation based on multiple factors. These factors included the need to protect the community from dangerous offenders like [Banniger], the gravity of [Banniger's] offenses in grooming and sexually assaulting J.Z. at such a young age, and [Banniger's] rehabilitative needs for his eventual release.

*Id.* at 25–27 (numerals and record citations omitted). We discern no abuse of discretion. The court demonstrated that it carefully considered the case and imposed a sentence within the guidelines. Because Banniger has not shown that the application of the guidelines was clearly unreasonable, we affirm. 42 Pa.C.S.A. § 9781(c)(2).

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: October 11, 2023

- 18 -