J-S44005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH FAUNTLEROY | : | |
| | : | |
| Appellant | : | No. 3052 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 23, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009645-2021

BEFORE: NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.: **FILED FEBRUARY 11, 2025**

Appellant Kenneth Fauntleroy appeals from the judgment of sentence imposed by the Honorable Stephanie M. Sawyer after a jury convicted him of rape and related crimes. On appeal, Appellant challenges the sufficiency and weight of the evidence, and he claims that the trial court erred when it failed to grant a continuance for a mental health evaluation prior to jury selection before the Honorable Anthony G. Kyriakakis. After review, we affirm Appellant's convictions, vacate the judgment of sentence, and remand for resentencing consistent with this memorandum.

The trial court summarized the facts of this case as follows:

The relevant facts in this matter took place between October 6, 2021 and October 8, 2021. N.T. Trial, 2/7/2023, at 59, 61. The victim in this case . . . (hereinafter "[the] Victim") was 19-years-old at the time and had recently moved to Philadelphia from New Jersey. *Id.* at 58. The Victim knew Appellant through her boyfriend for "a couple months," and Appellant told the Victim that she could remain in Appellant's home after her "boyfriend got

locked up." *Id.* at 60-61. Appellant was 46-years-old at the time and the Victim saw him "like an uncle figure because that's what he told [her] and [her] boyfriend to call him." *Id.* at 72-73.

The Victim only ended up staying at the home with Appellant for "a couple days." *Id.* at 59. Appellant's nephew, Kaleel, was also living there along with Kaleel's girlfriend, Nyamah, and their two-year-old daughter. *Id.* After the Victim started to stay in Appellant's home, Appellant started "pushing himself on her" and told her that she would need to leave if she "didn't do anything for him." *Id.* at 100. Additionally, Appellant texted the Victim "pictures of his [penis]." *Id.* at 74.

At "around 11-something" on October 8, 2021, the Victim was sitting on the couch in the living room. *Id.* at 60. Kaleel and Nyamah went to bed with their baby, leaving the Victim alone with Appellant "watching TV." *Id.* at 63. At some point soon thereafter, Appellant pulled his "pants down" and "grabbed [the] Victim's hand and made [her] j--k him off." *Id.* The Victim "kept trying to stop" but Appellant "just grabbed [her] arm" and pulled the Victim to his room upstairs. *Id.* at 64. The Victim "kept saying 'no' the whole time from downstairs to the bedroom." *Id.* at 83.

Once in Appellant's room, Appellant closed the door and took off all of the Victim's clothes. *Id.* at 64. Appellant "put his tongue inside" the Victim's vagina and starting to suck on her [breasts]. *Id.* The Victim was "saying no, but [Appellant] didn't listen." *Id.* Appellant then vaginally penetrated the Victim with his penis, which "went all the way in." *Id.* Appellant put a condom on for at least part of the time that his penis was inside the Victim. *Id.* at 71. The Victim "kept saying, 'No, stop.'" *Id.* at 66. Instead of stopping, Appellant "started holding [the Victim's] arms down so [she] couldn't move." *Id.*

After some time, Appellant got off of the Victim, "left the room, went to Kaleel's room and [told Kaleel] 'She's gotta go.'" *Id.*[FN1] Meanwhile, the Victim "threw [her] clothes on and went outside." *Id.* at 67. She ran "to the corner and . . . called the cops [and] stayed there until the cops came." *Id.* The police arrived and, as part of the ensuing investigation, the police saw "female underwear paired with used condoms on the floor" of Appellant's bedroom. *Id.* at 131.

[FN1] Kaleel testified at trial and, during his testimony, a prior statement of his to a detective was read into evidence. In this statement, Kaleel described Appellant as "frantic and

telling us [the Victim] started screaming when he was having sex with her and she had to go." [N.T. Trial, 2/7/23,] at 102. Additionally, in his statement, Kaleel said that he went downstairs where the Victim was "putting her clothes on, shaking and crying . . . and she was hysterical." *Id.*

Appellant decided not to testify at trial after the trial court colloqued Appellant concerning his testimonial rights. N.T. Trial, 2/8/2023, at 9-11. When asked if he had "any mental health conditions that might make it difficult for [him] to understand what's happening," Appellant answered, "No." *Id.*

Trial Ct. Op., 4/23/24, at 2-3 (some formatting altered).

Ultimately, the jury found Appellant guilty of rape—forcible compulsion, involuntary deviant sexual intercourse (IDSI)—forcible compulsion, indecent assault—forcible compulsion, and sexual assault.[1] *See* N.T. Trial, 2/8/23, at 84-85. On June 23, 2023, the trial court sentenced Appellant to an aggregate term of five to ten years of incarceration followed by eight years of probation. *See* N.T. Sentencing, 6/23/23, at 18-19.[2] Appellant filed a post-sentence motion challenging the weight of the evidence, which was denied by operation of law on October 30, 2023.[3]

_____

[1] *See* 18 Pa.C.S. §§ 3121(a)(1), 3123(a)(1), 3126(a)(2), and 3124.1, respectively.

[2] Specifically, Appellant was sentenced to concurrent terms of five to ten years of incarceration followed by three years of probation for rape and IDSI. The trial court sentenced Appellant to five years of probation for sexual assault to be served consecutively to the sentences for rape and IDSI, and sentence of two years of probation for indecent assault to be served concurrently with the sentence for sexual assault for an aggregate term of five to ten years of incarceration, followed by eight years of probation. *See* N.T. Sentencing, 6/23/23, at 18-19.

[3] *See* Pa.R.Crim.P. 720(B)(3)(a).

Appellant subsequently filed a timely notice of appeal.  Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues:

1. Whether the evidence was not sufficient to establish that [Appellant] engaged in sexual intercourse with the [Victim] by forcible compulsion as to rape (F1)?

2. Whether the evidence was not sufficient to establish that [Appellant] engaged in deviate sexual intercourse with[] the [Victim] . . . by forcible compulsion as to IDSI (F1)?

3. Whether the evidence was not sufficient that [Appellant] engaged in sexual intercourse or deviate sexual intercourse without the [Victim's] consent . . . as to sexual assault (F2)?

4. Whether the evidence was not sufficient to establish that [Appellant] had indecent contact with the [Victim] or caused the [Victim] to have indecent contact with [Appellant] for the purpose of arousing sexual desire in [Appellant] or the [Victim] by forcible compulsion as to indecent assault (M1)?

5. Whether a conviction of engaging in sexual intercourse with the [Victim] by forcible compulsion as to rape (F1), was against the weight of the evidence when [Appellant's] nephew told two different accounts of the event at the scene of the incident, the [Victim] had sex with [Appellant's] nephew two days prior, semi-nude photos of the [Victim] were sent to [Appellant] the same evening (that were taken by [Appellant's] nephew's girlfriend) and a witness testified at trial the [Victim] stated when she told [Appellant] to stop having sex with her he stopped?

6. Whether a conviction of engaging in deviate sexual intercourse . . . by forcible compulsion as to IDSI (F1), was against the weight of the evidence when [Appellant's] nephew told two different accounts of the event at the scene of the incident, the [Victim] had sex with [Appellant's] nephew two days prior, semi-nude photos of the [Victim] were sent to [Appellant] the same evening (that were taken by [Appellant's] nephew's girlfriend) and a witness testified at trial the [Victim] stated when she told [Appellant] to stop having sex with her he stopped?

- 4 -

7. Whether a conviction of engaging in sexual intercourse or deviate sexual intercourse without the [Victim's] consent . . . as to sexual assault (F2), was against the weight of the evidence when [Appellant's] nephew told two different accounts of the event at the scene of the incident, the [Victim] had sex with [Appellant's] nephew two days prior, seminude photos of the [Victim] were sent to [Appellant] the same evening (that were taken by [Appellant's] nephew's girlfriend) and a witness testified at trial the [Victim] stated when she told [Appellant] to stop having sex with her he stopped?

8. Whether a conviction of having indecent contact with the [Victim] or caused the [Victim] to have indecent contact with [Appellant] for the purpose of arousing sexual desire in [Appellant] or the [Victim] by forcible compulsion as to indecent assault (M1), was against the weight of the evidence when [Appellant's] nephew told two different accounts of the event at the scene of the incident, the [Victim] had sex with [Appellant's] nephew two days prior, semi-nude photos of the [Victim] were sent to [Appellant] the same evening (that were taken by [Appellant's] nephew's girlfriend) and a witness testified at trial the [Victim] stated when she told [Appellant] to stop having sex with her he stopped?

9. Whether it was error not to grant a continuance for a mental health evaluation before jury selection when [Appellant] made an outburst, stated that he had a mental health condition and stated he was having a problem with his medication?

Appellant's Brief at 5-8 (some formatting altered).

## Sufficiency of the Evidence

In his first four claims, Appellant challenges the sufficiency of the evidence supporting his convictions, which he argues as a single issue in his brief.[4]  ***See*** Appellant's Brief at 12-16.  Appellant asserts that the

_____

[4] As noted, Appellant combines his first four claims into a single argument his brief.  ***See*** Pa.R.A.P. 2119(a) (stating that "[t]he argument shall be divided into as many parts as there are questions to be argued").  However,
*(Footnote Continued Next Page)*

Commonwealth failed to prove the elements of rape—forcible compulsion, IDSI—forcible compulsion, indecent assault—forcible compulsion, and sexual assault. *See id.* Specifically, Appellant argues that the evidence was insufficient to prove the forcible compulsion element for rape, IDSI, and indecent assault, and that the Commonwealth failed to prove that Appellant acted without the Victim's consent with respect to the conviction for sexual assault. *See id.* at 14-16.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

_____

Appellant's noncompliance with Rule 2119(a) does not impede our review, and we will proceed with our discussion. *See, e.g.*, *Commonwealth v. Levy*, 83 A.3d 457, 461 n.2 (Pa. Super. 2013) (declining to find waiver on the basis of Appellant's failure to comply with the Rules of Appellate Procedure, where the errors did not impede this Court's review).

***Commonwealth v. Palmer***, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted). Further, "[t]his Court has long-recognized that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." ***Commonwealth v. Charlton***, 902 A.2d 554, 562 (Pa. Super. 2006) (citation omitted and formatting altered). "If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict." ***Id.*** (citation omitted and formatting altered).

Appellant was convicted of rape—forcible compulsion, IDSI—forcible compulsion, indecent assault—forcible compulsion, and sexual assault, and these crimes are defined as follows:

Rape:

**(a) Offense defined.—**A person commits a felony of the first degree when the person engages in sexual intercourse[5] with a complainant:

(1) By forcible compulsion.[6]

---

[5] "Sexual intercourse" is defined as follows: "In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S. § 3101.

[6] "Forcible compulsion" is defined as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. The term includes, but is not limited to, compulsion resulting in another person's death, whether the death occurred before, during or after sexual intercourse." 18 Pa.C.S. § 3101.

- 7 -

18 Pa.C.S. § 3121(a)(1).

IDSI:

**(a) Offense defined.—**A person commits a felony of the first degree when the person engages in deviate sexual intercourse[7] with a complainant:

(1) by forcible compulsion;

18 Pa.C.S. § 3123(a)(1).

Indecent assault:

**(a) Offense defined.—**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact[8] with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

\*    \*    \*

(2) the person does so by forcible compulsion[.]

18 Pa.C.S. § 3126(a)(2).

Sexual assault:

_____

[7] "Deviate sexual intercourse" is defined as:

Sexual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal.  The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures.

18 Pa.C.S. § 3101.

[8] "Indecent contact" is defined as follows: "Any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person."  18 Pa.C.S. § 3101.

. . . a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S. § 3124.1.

Regarding forcible compulsion, "in addition to sheer physical force or violence, forcible compulsion encompasses an act of using superior force, physical, moral, psychological or intellectual, to compel a person to do a thing against that person's volition and/or will." **Commonwealth v. Banniger**, 303 A.3d 1085, 1092 (Pa. Super. 2023) (citations omitted and some formatting altered). "[T]he object of the force is 'to compel a person to engage in sexual intercourse [or deviate sexual intercourse] against that person's will.'" **Id.** (quoting **Commonwealth v. Rhodes**, 510 A.2d 1217, 1226 (Pa. 1986)).

> Whether a defendant used forcible compulsion depends on the totality of the circumstances, including this non-exhaustive list of factors:
>
>> the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.

**Id.** at 1092-93 (quoting **Rhodes**, 510 A.2d at 1226). "Relatedly, forcible compulsion subsumes a lack of consent. That is, if the Commonwealth proves that a defendant exercised forcible compulsion, then it has proved that the victim did not consent." **Id.** at 1093 (citations omitted).

Here, the record reflects that Appellant had a position of power and authority over the nineteen-year-old Victim, who was homeless. Appellant leveraged her need for stable housing by taking her into his home and forcing her into unwanted sexual conduct. Specifically, the Victim testified that she was homeless and living at Appellant's house. *See* N.T. Trial, 2/7/23, at 61-62. Appellant referred to Appellant as "an uncle figure" and Appellant told her to call him uncle. *See id.* at 72-73. During Appellant's nephew's testimony, his statement to police was read to the jury, and in it, Appellant's nephew said that Appellant was forcing himself on the Victim, and that the Victim rejected having a sexual relationship with Appellant, and Appellant's nephew stated that Appellant told him that if the Victim "didn't do anything for him she had to leave." *See id.* at 100.

Further, the Victim testified that Appellant used actual physical force to compel her to engage in sexual activity with him. The Victim testified that Appellant forced her to touch his penis. *See id.* at 63. Victim further stated: "Then [Appellant] forced me, like, and grabbed my hand and made me j--k him off." *See id.* Appellant then physically dragged the Victim up the stairs by her arm and removed her clothing. *See id.* at 64, 81. The Victim testified that Appellant proceeded to lick her vagina while she repeatedly told him "no," and Appellant then placed his penis inside her vagina. *See id.* 64-66. During these events, the Victim continued to say "no," and was telling Appellant to "stop." *See id.* 64-66, 80. During the assault, the Victim said that Appellant held her arms down so that she could not move. *See id.* 66.

As stated, we review the review the evidence in the light most favorable to the Commonwealth. *See Palmer*, 192 A.3d at 89. After review, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that Appellant committed the crimes of rape—forcible compulsion, IDSI—forcible compulsion, indecent assault—forcible compulsion, and sexual assault. *See Banniger*, 303 A.3d at 1092-93; *see also Charlton*, 902 A.2d at 562 (holding that the uncorroborated testimony of a sexual assault victim, if believed by the finder of fact, is sufficient to convict the defendant). Accordingly, Appellant is not entitled to relief.

**Weight of the Evidence**

In his next four issues, Appellant argues that the verdict was against the weight of the evidence. Appellant's Brief at 16-17.

Appellant argues that he was entitled to a new trial based on the weight of the evidence. *See id.* at 16-17. Appellant alleges that there was evidence that revealed that the Victim sent Appellant photos of herself wearing lingerie, the Victim had engaged in consensual sexual relations with Appellant's nephew two days prior to the incident, DNA found on the Victim did not match Appellant, an examination by a nurse did not reflect injuries to the Victim's genitals, and a witness, Appellant's former partner girlfriend, stated that the Victim told her that she had sex with Appellant and when the Victim told Appellant to stop, Appellant stopped. *See id.* at 17.

When reviewing the denial of a motion for a new trial based on the weight of the evidence, we apply the following standard of review:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017)

(citations omitted).

This Court has explained

[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

\* \* \*

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

- 12 -

*Commonwealth v. Wright*, 314 A.3d 515, 524 (Pa. Super. 2024) (citations omitted and some formatting altered).

Here, the trial court stated:

Appellant took in [the Victim, who was 19 years old and homeless] and clearly leveraged her housing needs to force her into sexually explicit interactions. When his sexual advances were rejected, he let her know that she would need to find a new place to live if she did not do things for him and texted [the Victim] pictures of his penis. Then, on October 8, 2021, . . . Appellant escalated his actions even further, pulling down his pants and forcing the Victim to stroke his penis before pulling her upstairs to his bedroom while she repeatedly said, "No." . . . Appellant took off the Victim's clothes while she verbally protested, stuck his tongue in her vagina, put on a condom, and placed his penis in the Victim's vagina while holding her down by the arms. The Victim screamed and continued to say, "No," until Appellant got off the Victim and left the room, telling his nephew that the Victim would need to leave the house. The jury's verdict shows that they believed the Victim and the record fully supports the crimes of which Appellant was found guilty.

Trial Ct. Op., 4/23/23, at 5-6.

Appellant's entire weight-of-the-evidence argument consists of his own summary of evidence that Appellant asserts supported his defense at trial. *See* Appellant's Brief at 17. However, Appellant fails to develop any argument or present citation to relevant legal authority establishing that the trial court abused its discretion in denying his motion for a new trial based on the weight of the evidence. "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review." *Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (citation omitted); *see also Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (holding that "where an appellate

brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." (citations omitted)). Accordingly, we conclude that Appellant waived this issue on appeal.[9]

**Competency**

Next, Appellant argues that the trial court abused its discretion by failing to grant a continuance for a competency evaluation. Appellant's Brief at 18-19. Our standard of review is as follows:

> The matter of granting or denying a continuance is within the discretion of the trial court. . . . [T]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels

---

[9] In any event, even if Appellant had developed an argument, we would conclude that there was no abuse of discretion in the trial court denying Appellant's motion for a new trial based on the weight of the evidence. In the trial court's opinion, it correctly states that "a jury's verdict should be disturbed only when it 'is so contrary to the evidence as to shock one's sense of justice.'" *See* Trial Ct. Op., 4/23/23, at 4 (quoting *Commonwealth v. Whitney*, 512 A.2d 1152, 1155 (Pa. 1986)). The trial court concludes that Appellant's argument "should overwhelmingly fail and the verdict and sentence should be affirmed," and that "there is nothing about Appellant's convictions that should shock any reasonable person's sense of justice." *Id.* at 5. We reiterate that the jury, sitting as the finder of fact, was free to believe some, all, or none of the evidence presented and to determine the credibility of the witnesses. *See Wright*, 314 A.3d at 524. Further, resolving contradictory or conflicting testimony, and determining credibility are matters for the jury to resolve. *See id.* This Court will not re-weigh the evidence or assess credibility, as this Court cannot substitute its judgment for that of the finder of fact. *See id.* On this record, were we to reach this issue, we would conclude that there was no abuse of discretion in denying Appellant's motion for a new trial, and the verdict does not shock the conscience. *See id.*; *Windslowe*, 158 A.3d at 712.

- 14 -

against continuances except for compelling reasons. Accordingly, a trial court exceeds its constitutional authority only when it exercises its discretion to deny a continuance on the basis of an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay[.]

*Commonwealth v. Sandusky*, 77 A.3d 663, 671-72 (Pa. Super. 2013)

(citations omitted and formatting altered).

We evaluate the trial court's failure to order a competency evaluation for an abuse of discretion. *See Commonwealth v. Mayer*, 685 A.2d 571, 572 n.1 (Pa. Super. 1996) (finding the advisory nature of 50 P.S. § 7402(d) ("the court . . . may order an incompetency examination . . . ."), indicates our review is for an abuse of discretion); *see also id.* ("[T]he legislature's use of the word 'may' indicates that an abuse of discretion standard is to be used in evaluating a trial court's action or inaction under the statute." (citation omitted)).

The Mental Health Procedures Act defines incompetence as follows:

**(a) Definition of Incompetency.—**Whenever a person who has been charged with a crime is found to be **substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense**, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues.

50 P.S. § 7402(a) (emphasis added). "The court, either on application or on its own motion, **may** order an incompetency examination at any stage in the proceedings . . . ." *Id.* § 7402(d) (emphasis added).

*Commonwealth v. Riviera*, 2269 EDA 2023, 2024 WL 4815020, at *6 (Pa.

Super. filed Nov. 18, 2024) (unpublished mem.).[10]

_____

[10] *See* Pa.R.A.P. 126(b) (stating the Superior Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

Further:

A defendant is presumed to be competent to stand trial. The burden, therefore, is on [the a]ppellant to prove, by a preponderance of the evidence, that he was incompetent to stand trial. To prove that he was incompetent, [the a]ppellant must establish that he was either unable to understand the nature of the proceedings against him or to participate in his own defense. To obtain a hearing on this claim, [the a]ppellant would have to proffer evidence sufficient to meet this burden.

*Commonwealth v. Smith*, 17 A.3d 873, 899-900 (Pa. 2011) (citations omitted and formatting altered).[11] An appellate court extends "great deference to the trial judge's determination as to competency because [the trial court] had the opportunity to observe directly a defendant's behavior." *Commonwealth v. Flor*, 998 A.2d 606, 617 (Pa. 2010) (citation omitted).

Here, jury selection occurred before Judge Kyriakakis, and the trial was held before Judge Sawyer. Prior to jury selection before Judge Kyriakakis, the record reflects that the following exchange regarding a continuance and competency evaluation before Judge Kyriakakis:

THE COURT: [Appellant], do you need a break?

[Appellant]: Yes, this is too much. This is too much. I can't do it.

_____

[11] In cases such as the one at bar where a defendant expresses suicidal thoughts or ideation, the standard remains the same, and the "defendant is presumed to be competent to stand trial, and the burden is on the defendant to prove by a preponderance of the evidence that he is incompetent to do so." *Commonwealth v. Blakeney*, 108 A.3d 739, 752 (Pa. 2014) (citation omitted); *see also Commonwealth v. Bomar*, 104 A.3d 1179, 1196 (Pa. 2014).

THE COURT: Listen, we are going to take a short break.

[Appellant]: I think about suicide every day. Every day.

THE COURT: We are going to take a short recess. And then when we resume, we will continue . . . .

[Appellant]: Yes, sir.

(A brief recess was taken)

THE COURT: All right. Are the parties ready to continue?

[Appellant's Counsel]: Yes, Your Honor.

[Asst. District Atty.]: Yes, Your Honor.

\* \* \*

[Appellant's Counsel]: Your Honor, I have a motion based on what happened earlier. I would ask that my client have a forthwith competency exam. I wasn't aware he was off his meds and I wasn't aware of his suicidal thoughts.

THE COURT: All right. Does the Commonwealth want to be heard on that motion?

[Asst. District Atty.]: Your Honor, I just would object. [Appellant's] mental health history as well as his ideations have been documented, including at the time of arrest. I don't see him as being incompetent to proceed. He seems to understand what is being stated to him.

Whether or not he is taking the specific medications like he's taken before, I don't believe is affecting his competency in any shape or form. This is a jury trial date we have had for close to a year.

[The] Commonwealth is ready. I would ask to proceed today.

THE COURT: It does seem to me, [Appellant's counsel], that while I do think [Appellant] needs to address his mental health issues and medication, he appears to fully understand the questions I am asking and to be aware of what's happening.

As far as the issue of competency, which is—I think might be an issue that we would have to address before proceeding to trial, I don't see any competency concerns.

- 17 -

[Appellant's Counsel]: Yes, Your Honor.

THE COURT: --to be raised, so I am going to deny the motion at this time.

[Appellant's Counsel]: Yes, Your Honor.

N.T., 2/6/23, at 11-14 (some formatting altered).

Following our review, we discern no abuse of discretion in Judge Kyriakakis' decision to decline to grant a continuance and in denying Appellant's motion for a competency hearing. *See Sandusky*, 77 A.3d at 671-72; *see also Smith*, 17 A.3d at 899-900; *Riviera*, 2024 WL 4815020, at *6. As Judge Sawyer's opinion noted, this matter proceeded to a jury trial before her, and Appellant did not raise competency concerns during the jury trial, at sentencing, or in post-sentence motions. *See* Trial Ct. Op., 4/23/24, at 6-7. Further, Judge Sawyer notes that "the court-order[ed] mental health evaluation did not raise any concerns about . . . Appellant's competency during the trial proceedings. It is patently disingenuous for . . . Appellant to raise the issue of competency now that the case is on appeal." *Id.* at 6-7. Critically, Appellant was presumed competent to stand trial, and it was Appellant's burden to prove, by a preponderance of the evidence, that he was not competent. *See Blakeney*, 108 A.3d at 752; *Smith*, 17 A.3d at 899-900. Specifically, Appellant was required to "establish that he was either unable to understand the nature of the proceedings against him or to participate in his own defense. To obtain a hearing on this claim, Appellant would have to proffer evidence sufficient to meet this burden." *Smith*, 17 A.3d at 900

(citations omitted). As noted, we extend "great deference to the trial judge's determination as to competency because [the trial court] had the opportunity to observe directly a defendant's behavior." ***Flor***, 998 A.2d at 617 (citation omitted). Here, the record reflects that Appellant proffered no evidence that he was not capable of understanding the proceedings or unable to participate in his defense. ***See Smith***, 17 A.3d at 900. Accordingly, we discern no abuse of discretion and conclude that Appellant is not entitled to relief. ***See Sandusky***, 77 A.3d at 671-72; ***see also Smith***, 17 A.3d at 899-900; ***Riviera***, 2024 WL 4815020, at *6.

### Legality of Sentence

Finally, we must address whether Appellant's sentence for sexual assault should have merged for sentencing purposes. Although Appellant did not raise this issue on appeal, we may address this issue *sua sponte*. ***See Commonwealth v. Watson***, 228 A.3d 928, 941 (Pa. Super. 2020) (holding that questions concerning merger implicate the legality of a sentence, and this Court may address such issues *sua sponte*); ***see also Commonwealth v. Tucker***, 143 A.3d 955, 960 (Pa. Super. 2016) (stating that "[a]n illegal sentence must be vacated" (citation omitted)).

When reviewing the legality of a sentence, "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Tighe***, 184 A.3d 560, 584 (Pa. Super. 2018) (citations omitted).

Section 9765 of the Sentencing Code provides as follows:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. This Court has explained that "[t]he statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Commonwealth v. Martinez*, 153 A.3d 1025, 1030 (Pa. Super. 2016) (citations omitted).

Here, Appellant was convicted for actions he perpetrated upon the Victim on October 8, 2021. *See* Crim. Information, 11/30/21; N.T. Trial, 2/7/23, at 61-66. During the assault on October 8, 2021, Appellant placed his tongue and then his penis in the Victim's vagina. *See* N.T. Trial, 2/7/23, at 64-66.[12] In addition to the sentences imposed for rape and IDSI, the trial court also imposed a sentence of five years of probation for sexual assault to be served consecutively the sentences for rape and IDSI. *See* N.T. Sentencing, 6/23/23, at 18-19. As this Court has explained, forcible compulsion subsumes lack of consent, and that

_____

[12] The Commonwealth recognized that Appellant committed only these two acts of sexual intercourse, and it acknowledged that remand may be necessary to correct Appellant's sentence should this Court conclude that sexual assault should have merged for purposes of sentencing. *See* Commonwealth's Brief at 10 n.6.

if the Commonwealth proves that a defendant exercised forcible compulsion, then it has proved that the victim did not consent. Thus, sexual assault (sexual intercourse or deviate sexual intercourse without consent) is a lesser-included offense of involuntary deviate sexual intercourse by forcible compulsion (and, by the same logic, of rape by forcible compulsion).

*Banniger*, 303 A.3d at 1093 (citing *Commonwealth v. Buffington*, 828 A.2d 1024, 1032 (Pa. 2003) (comparing the elements of 18 Pa.C.S. §§ 3124.1 and 3123(a)(1))).

Because sexual assault is a lesser included offense of rape, and IDSI and occurred during the same criminal act, sexual assault should have merged with either rape or IDSI for purposes of sentencing. *See Buffington*, 828 A.2d at 1032; *Commonwealth v. Dickens*, 1068 EDA 2023, 2024 WL 1828930, at *6 (Pa. Super. filed Apr. 26, 2024) (unpublished mem.); 42 Pa.C.S. § 9765.

Accordingly, we are constrained to vacate the sentence imposed for sexual assault. Further, because the sentence imposed for sexual assault was consecutive to other sentences imposed, our disposition disturbs the trial court's sentencing scheme. Therefore, although we affirm Appellant's convictions, we vacate Appellant's judgment of sentence in its entirety and remand for resentencing consistent with this opinion. *See Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa. Super. 2006) (stating that if this Court's "disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan" (citation omitted)).

Judgment of sentence vacated. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/11/2025