J-S34037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICKEY WILLIAMS | : | |
| | : | |
| Appellant | : | No. 308 MDA 2025 |

Appeal from the Judgment of Sentence Entered February 3, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0001205-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICKEY WILLIAMS | : | |
| | : | |
| Appellant | : | No. 309 MDA 2025 |

Appeal from the Judgment of Sentence Entered February 3, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0003449-2021

BEFORE:  STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED DECEMBER 16, 2025**

In these consolidated appeals, Rickey Williams ("Appellant") challenges the sufficiency of the evidence for his attempted rape convictions at docket number CP-22-CR-1205-2022 ("case 1205"), and also asserts that the sentence imposed at CP-22-CR-3449-2021 ("case 3449") was illegal.  After careful review, we affirm Appellant's judgment of sentence at case 1205;

affirm in part, and vacate in part, his judgment of sentence at case 3449; and remand for resentencing at case 3449.

Appellant's two trials were prosecuted consecutively, with case 1205 starting first, beginning on October 28, 2024. T.S., aged 38 at the time of trial but a minor when the events in question occurred, testified that she lived with her parents in Lykens, Pennsylvania, between the years 1994 and 2004. N.T., 10/28/24, at 28-29. During that time, Appellant and his wife were best friends with T.S.'s parents, and they would visit her parents at her home about every other weekend. *Id.* at 29-30. During these visits, Appellant, alone, would come into the bedroom that T.S. shared with her older sister and tickle both girls to make them laugh. *Id.* at 32. However, when T.S. was about 9 or 10 years old, Appellant's tickling episodes changed — T.S. testified that "he was like, on top of me and, like, trying to kiss me and touch me. And that's when it kind of started[.]" *Id.* at 33. T.S. asserted that Appellant was "very aggressive" and "a lot stronger" than she was. *Id.* These interactions occurred regularly until T.S. turned 17. *Id.* at 34.

T.S. explained that Appellant would put his hands down her pants during these incidents, sometimes over her underwear and other times underneath, and that this occurred at least 30 times. *Id.* at 35. Appellant would also touch her breasts. *Id.* T.S. stated that Appellant would enter her bedroom and, "full force, like, be on top of [me]," pushing her forcefully on her back onto her bed. *Id.* at 36. T.S. would make noise, trying to get Appellant off of her, but he would not stop until her parents began to investigate. *Id.* at

37. More aggressive touching began when T.S. got older and started to date, with Appellant now inserting his fingers into her vagina. *Id.* at 38-39. T.S. testified that this only occurred about five times, but it involved Appellant lying on top of her and holding her arms above her head, incapacitating her. *Id.* at 39-40. Sometimes, Appellant would whisper into her ear, "You're going to have sex with me." *Id.* at 45-46.

T.S. further testified that, although she did not tell her parents about Appellant's actions, as she got older she began to avoid being at home when Appellant would likely be there. *Id.* at 40. However, Appellant began appearing at her home unannounced, showing up in his park ranger uniform, which included a visible firearm. *Id.* at 41-42.[1] T.S. explained that she was terrified of guns. *Id.* at 42. During one of these unannounced visits, T.S. was alone at home, and Appellant pushed her back on a recliner, held her down by her shoulders, and began rubbing his penis against her leg. *Id.* at 43-44. T.S. told police that Appellant began to undo his belt and she saw the outline of his penis through his underwear. *Id.* at 96-97. Appellant wore his weapon

_____

[1] Appellant's constant wearing of a weapon as a part of his uniform was stipulated to at trial, as follows:

> [Appellant] was trained as a park ranger … when he was an employee with the park rangers. The standard uniform did not include a firearm. Only pepper spray could be carried while on duty. Firearms were also not issued by the County to be a park ranger. The Commonwealth would call Detective Gonzalez in rebuttal to this testimony. Detective Gonzalez, if re-called to testify, would state that he has personally observed and seen photographs of [Appellant] openly carrying a firearm.

N.T., 10/28/24, at 107.

during this act. *Id.* at 44. Appellant also put his hands down her pants and up her shirt, but then her father returned home. *Id.* at 45. At that point, Appellant "just got up and went out to the kitchen" with her dad. *Id.* T.S. moved out of the home when she turned 17. *Id.* at 47.

After the jury trial, Appellant was convicted of four offenses: (1) criminal attempt – rape by forcible compulsion (18 Pa.C.S. § 901(a)), (2) criminal attempt – rape by threat of forcible compulsion (18 Pa.C.S. § 901(a)), (3) aggravated indecent assault without consent (18 Pa.C.S. § 3125(1)), and (4) aggravated indecent assault – defendant over 18 and victim under 14 (18 Pa.C.S. § 3125(6)). The trial court ordered Appellant to be assessed for possible classification as a sexually violent predator (SVP). Order, 11/1/24. Thereafter, Appellant was sentenced to an aggregate term of 7 to 15 years of incarceration, followed by 5 consecutive years of state probation. Order, 2/3/25. Appellant was also awarded time credit on his sentence, and deemed to be an SVP.

Appellant proceeded to trial at case 3449 on October 30, 2024. There, a mother testified that she found evidence of a sexual conversation between her 14-year-old daughter and Appellant, including an exchange of photos, on the girl's cell phone. N.T., 10/30/24, at 31-32. The mother recognized Appellant from his photo as someone she had known previously from work, when he was a security guard in the courthouse. *Id.* at 32. She also took photographs of the interactions on the phone between her daughter and Appellant to preserve the evidence. *Id.* at 36. Included was a photo of

Appellant with his pajama pants on but evincing an erection. *Id.* at 55-56. After the mother turned the girl's phone over to police, a detective continued the conversation with Appellant. Appellant then sent the girl a photo of his buttocks, told her that he liked to wear women's lingerie, and asked her to record a urination video for him. *Id.* at 96-97.

Based upon this testimony, Appellant was convicted of four counts: (1) criminal attempt – photographing a sexual act involving a child (18 Pa.C.S. § 901(a)), (2) criminal solicitation – photographing a sex act with a child (18 Pa.C.S. § 902), (3) unlawful contact with a minor (18 Pa.C.S. § 6318(a)(5)), and (4) criminal use of a communication facility (18 Pa.C.S. § 7512(a)). After the joint sentencing hearing conducted on February 3, 2025, Appellant was sentenced to a term of 5 to 10 years of incarceration at counts 1, 3, and 4 (count 2 merged with count 1), to be served concurrently with each other and concurrently to the sentence at case 1205. Order, 2/3/25.

Appellant did not file a post-sentence motion in either case. However, he did file a timely notice of appeal at each docket number on February 28, 2025. This Court consolidated Appellant's appeals *sua sponte*. Order, 4/17/25. The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal, but it did file an opinion related to Appellant's sufficiency claim.

Appellant lists the following issues for our review in this consolidated appeal:

A.    At [case 1205], was there insufficient evidence to prove the offenses of criminal attempt[ed] rape by forcible compulsion and threat to use forcible compulsion?

B.    At [case 3449], was the sentence imposed at [c]ount 4, criminal use of a communication facility, a felony of the third degree, an illegal sentence when the [c]ourt imposed a sentence of 5-10 years?

Appellant's Brief at 6.

Appellant's first issue challenges the sufficiency of the evidence for his convictions for attempted rape. Because a determination of the sufficiency of the evidence presents a question of law, "our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Williams*, 176 A.3d 298, 305 (Pa. Super. 2017). Further, we analyze this issue under the following guidelines:

> When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented.

> *Commonwealth v. Toomer*, 159 A.3d 956, 960-61 (Pa. Super. 2017) (internal citations and quotation marks omitted).

*Commonwealth v. Ewida*, 333 A.3d 1269, 1279 (Pa. Super. 2025).

Appellant was convicted of attempted rape at counts 1 and 2 of case 1205. Count 1 charged Appellant with attempted rape by use of forcible compulsion, and count 2 charged Appellant with attempted rape through the threat of forcible compulsion. Both counts pertained to the incident where Appellant showed up unannounced at T.S.'s home, forced her into a recliner, unbuckled his belt, and rubbed his erect penis on her leg before stopping when her father unexpectedly arrived home. On appeal, Appellant maintains that his convictions must be overturned because no forcible compulsion was proven at trial. Appellant further asserts:

> In short, while there would be a substantial step towards committing sexual assault, to escalate to rape would allow lower levels of conduct to subsume the greater. [Appellant's] conduct, while sufficient to prove a substantial step towards sexual assault and the other convictions, does not demonstrate the required *mens rea* to prove rape. The victim's subjective feelings, understandable for a sexual assault victim, do not amount to rape solely because she believed it to be so. Thus, the convictions must be vacated.

Appellant's Brief at 21.

The statute provides:

### § 3121. Rape

**(a) Offense defined.--**A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:

(1) By forcible compulsion.

(2) By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.

18 Pa.C.S. § 3121(a)(1), (2). Both sub-sections of the statute require that the Commonwealth prove that the defendant utilized forcible compulsion. As this Court has explained:

> By statute, forcible compulsion includes compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. Thus, in addition to sheer physical force or violence, forcible compulsion encompasses an act of using superior force, physical, moral, psychological or intellectual, to compel a person to do a thing against that person's volition and/or will. For these sexual offenses, the object of the force is to compel a person to engage in sexual intercourse against that person's will.
>
> Whether a defendant used forcible compulsion depends on the totality of the circumstances, including this non-exhaustive list of factors:
>
>> the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.
>
> Our courts have not specified every set of circumstances that can show forcible compulsion, which turns on the facts of each case.

***Commonwealth v. Banniger***, 303 A.3d 1085, 1092–93 (Pa. Super. 2023) (cleaned up). Further, the Commonwealth does not need to establish that the victim resisted in order to prove forcible compulsion. ***Id.*** at 1093. "The inquiry is whether the defendant's physical, intellectual, moral, emotional, or psychological force compelled the victim to submit[.]" ***Id.*** Finally, forcible compulsion requires "something more than non-consent." ***Id.***

The trial court addressed Appellant's claim of insufficient evidence with the following analysis:

- 8 -

Here, the jury heard evidence of [Appellant's] psychological and physical domination over T.S. during her childhood upon which they could properly conclude that forcible compulsion or threat of forcible compulsion to commit rape occurred. On the date of these crimes, [Appellant] appeared at T.S.'s parent[s'] house when she was alone. She had endured years of sexual abuse by [Appellant] which began when she was a young child. T.S. testified to her fear of disclosing the abuse to her parents, with whom [Appellant] was a friend and frequent visitor. On the day [Appellant] appeared unannounced, he wore a uniform and carried a gun as a show of authority. T.S. testified to her extreme fear of guns. At that instance, [Appellant] physically dominated T.S. by pushing her back in a recliner such that she could not push him away.

Further, the Commonwealth presented evidence upon which the jury could properly conclude that [Appellant] intended to rape T.S. [Appellant] took substantial steps toward committing rape by arriving at her house while she was alone, physically overpowering her, pushing her onto a recliner, unhooking his belt and opening his pants, to reveal an erect penis visible through his underwear. The jury could properly conclude that the intended rape was interrupted by the arrival of T.S.'s father.

Trial Court Opinion, 5/6/25, at 7-8.

After review, we agree with the trial court. Although Appellant argues that the Commonwealth failed to prove forcible compulsion, the evidence showed that Appellant used the weight of his body to physically prevent T.S. from moving off the recliner. Appellant also arrived while wearing a firearm, of which T.S. was terrified, and despite the fact that a weapon was not a part of Appellant's park ranger uniform — which adds to the inference that Appellant intended to intimidate T.S. Finally, T.S. testified that, while on the recliner, she saw Appellant begin to undo his belt, revealing the outline of his penis, but that the incident then stopped because her father arrived home. Appellant's actions during this incident, combined with the fact that he had

- 9 -

previously assaulted T.S. and told her that he wanted to have sex with her, were sufficient for the jury to conclude that he was acting with the specific intent to rape her. Moreover, these facts clearly establish that Appellant used force to overcome any resistance provided by T.S. **Compare Commonwealth v. Faison**, 297 A.3d 801, 831 (Pa. Super. 2023) (finding sufficient evidence to support an attempted rape conviction and the finding of forcible compulsion where the appellant, who had sexually assaulted the victim previously, forcefully pinned the victim against a wall and began to remove her pants while telling her that he wanted to fuck her; the victim was scared, shaking, crying, and unable to move); **with Commonwealth v. Eckrote**, 12 A.3d 383, 387 (Pa. Super. 2010) (finding that both physical and psychological force was used such that the conviction for rape by forcible compulsion was proper, where the appellant drove the unwilling victim to a secluded location, told her that he wanted to have sex with her and threatened to kill himself if she refused, then pushed the victim back into the passenger seat, climbed on top of her, and penetrated her); **and Commonwealth v. Riley**, 643 A.2d 1090, 1092 (Pa. Super. 1994) (finding forcible compulsion existed where the appellant, after the victim had rebuffed his request for sex, rolled on top of her, pinning her body with his body weight; the court stated that this was "plainly forcible compulsion"). Accordingly, we conclude that the evidence is sufficient to support Appellant's convictions for attempted rape.

In his second issue on appeal, Appellant maintains that the sentence imposed at case 3449 is greater than the lawful maximum, making it an illegal

sentence. The Commonwealth agrees that the sentence imposed is improper and that a remand for resentencing should occur. Any claim which asserts that an imposed sentence exceeds the statutory maximum for that charge implicates the legality of the sentence. *See Commonwealth v. Foster*, 17 A.3d 332, 336 (Pa. 2011). A claim that implicates the legality of an appellant's sentence is non-waivable on appeal, despite the lack of a post-sentence motion challenging the sentence. *Commonwealth v. Wolfe*, 140 A.3d 651, 660 (Pa. 2016). Thus, we may review this matter despite Appellant's not filing a post-sentence motion in this case. *Commonwealth v. Zampier*, 952 A.2d 1179, 1181 (Pa. Super. 2008) (stating that the failure to file post-sentence motions does not result in a waiver of an illegal sentencing claim on appeal).

The scope and standard of review used to evaluate the legality of a sentence are well-established. If no statutory authorization exists for a particular sentence, the sentence is illegal and subject to correction. *Commonwealth v. Tucker* 143 A.3d 955, 960 (Pa. Super. 2016). An illegal sentence must be vacated. *Id.* "In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law." *Id.*

Appellant was convicted at count 4 of case 3449 of criminal use of a communication facility as set forth in 18 Pa.C.S. § 7512. According to this statute, a person commits a felony of the third degree upon conviction. 18 Pa.C.S. § 7512(a). Further, a person convicted of a third-degree felony may be sentenced to no more than seven years of incarceration. 18 Pa.C.S.

§ 1103(3). Appellant was sentenced to a term of 5 to 10 years on this charge, more than the lawful maximum. Thus, his sentence on that count is illegal and must be vacated. We therefore vacate Appellant's sentence for that conviction, and remand this case for resentencing on count 4 in case 3449 consistent with Section 1103(3).

For the foregoing reasons, we affirm Appellant's judgment of sentence in case 1205. In case 3449, we vacate Appellant's judgment of sentence for count 4 (criminal use of a communication facility), and remand for resentencing on that conviction. We affirm his judgment of sentence in case 3449 in all other respects.

Judgment of sentence in CP-22-CR-0001205-2022 affirmed. Judgment of sentence in case CP-22-CR-0003449-2021 affirmed in part and vacated in part. Case CP-22-CR-0003449-2021 remanded for resentencing on count 4. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/16/2025